CRABTREE, J. T. C.
This is a local property tax case wherein plaintiff seeks review of judgments of the Monmouth County Board of Taxation affirming the assessment with respect to plaintiff’s property located on Tinton Avenue in Eatontown, New Jersey (Block 7, Lot 1) for the tax years 1976 through 1979. The assessment for those years was:
Land $ 378,000
Improvements 1,441,800
Total $1,819,800
The land consists of 8.14 acres, upon which a 2-story brick veneer garden apartment complex has been constructed. The complex contains 108 apartments (76 3 Vi room units, 32 4*/2 room units), with partial basements housing laundry and tenant storage facilities. On-site improvements include a 1,500 square foot *96 in-ground swimming pool, an 840 square foot building containing dressing rooms and rest room facilities, and a macadam-surfaced parking lot for 190 automobiles. The owner provides cooking fuel, heat and hot water. Tenants pay for their own electricity.
Plaintiff acquired the subject property on October 11,1968 for $1,425,280. Part of the consideration was plaintiff’s assumption of a mortgage with a principle balance of $1,309,675, the remainder of the price being paid in cash. The mortgage carried an interest rate of 5Vt%.
At issue are the true value of the property and the application of NJ.S.A. 54:2-40.4 (Chapter 123) for 1978 and 1979. No discrimination is alleged for 1976 or 1977.
VALUATION
A. 1976-1977
The respective contentions of the parties’ experts and the approaches and analytical tools used by them are as set forth in the following tables:
Plaintiff Defendant
True Value $1,212,200 $1,890,000
Approach principally relied upon Income Market
Capitalization technique Building residual Building residual
Overall capitalization rate 14.12%[1] 12.26% [2]
Economic rent $285,591 $348,400
Vacancy and loss factor 5% 3%
Effective gross income-$271,467 $333,000
Effective net income $161,714 $226,500[3]
*97 As indicated in the foregoing tabulation, plaintiffs expert relied primarily upon the income approach in his determination of true value for 1976 and 1977. He rejected the market approach because of the lack of sales of comparable properties. He considered the cost approach but did not utilize it because, in his opinion, purchasers of apartment complexes such as the subject property are interested in the income stream, not in replacement costs. Furthermore, he added, the cost approach, if properly used, will approximate the value indicated by the income approach.
Plaintiff’s expert calculated economic rent on the basis of the average of gross rent potential allowable by the Department of Housing and Urban Development (HUD) for calendar years 1975 and 1976. His vacancy and loss factor of 5% reflected his estimate of the quality and durability of the rents, even though plaintiff’s actual vacancy and loss experience was greater for the two test years of 1975 and 1976. The expert then stabilized all actual expenses for the test years except for replacement reserves and management, legal and accounting fees which he estimated at 2lh% of gross rent potential and 5% of effective gross income, respectively.
The difference in the determination of effective net income by the parties’ experts is attributable almost entirely to the level of gross rent potential (economic rent), as their projected expenses are virtually the same and the disparity between their respective vacancy and loss factors is not substantial.
Defendant’s expert postulates gross rent potential at $343,400 for all years under review. He based his conclusion upon unit rentals prevailing in June 1978 as reflected in reports of the building inspector (presumably defendant’s building inspector). He ignored the gross rent potential reported by the plaintiff to HUD for 1975 and 1976, notwithstanding the availability of that information no later than the dates petitions were filed with the Division of Tax Appeals for tax years 1976 and 1977. His conclusion is thus founded not only upon an unverified second *98 ary source but upon mid-1978 rentals, data which could not possibly reflect actual conditions two years earlier, given the pace of inflation from 1976 forward.
Accordingly, I reject the gross rent potential submitted by defendant’s expert; and I find the effective net income of the subject property for each of the years 1976 and 1977 to be $161,714, the amount determined by plaintiff’s expert. In the absence of convincing contrary evidence, actual rents paid by tenants of a well-managed apartment project[4] are prima facie representative of economic rent. Parkview Village Ass’n v. Collingswood, 62 N.J. 21, 297 A.2d 842 (1972).
I accept all the components of plaintiff’s capitalization rate. The risk-oriented components thereof (interest and recapture rates) are a realistic reflection of the demands of the long-term investment market during 1976 and 1977. I also find his tax rate to be appropriate, as it is the average of the actual tax rates for 1976 and 1977. Actual tax rates are used where, as here, assessment discrimination is not in issue. Fort Lee v. Hudson Terrace Apts., 175 N.J.Super. 221, 231, 417 A.2d 1124 (App.Div.1980).
I give great weight to the opinion of plaintiff’s expert, as I am impressed with the facts and reasoning forming the foundation of his opinion. In re Port of New York Authority, 28 N.J.Super. 575, 101 A.2d 365 (App.Div.1953); Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div.1959), certif. denied 30 N.J. 153, 152 A.2d 171 (1959).
I reject all the components of the capitalization rate used by defendant’s expert. As stated above, I find the risk-oriented *99 components of the capitalization rate employed by plaintiffs expert to be more in harmony with market demands and his use of the actual tax rate is more reflective of sound tax appraisal practices than the lower rate used by defendant’s expert. The fundamental flaw in the latter’s capitalization analysis, however, is found in his proposed recapture rate of 1.26%, a variant of the annuity method which is inappropriate for property which does not involve long-term leases with high-grade commercial or industrial tenants. Moreover, the rate is predicated upon a holding period of 16 years and 8 months, during which time 40% of the owner’s investment is recovered, with the balance recovered upon sale. That holding period, in turn, is based upon an erroneous view of the applicable Federal tax laws governing the treatment of a portion of gain upon the property’s disposition. The United States Internal Revenue Code (IRC or the Code) provides that, upon sale of real property ordinarily entitled to favorable capital gain tax treatment, that portion of the gain attributable to the excess of claimed accelerated depreciation deductions over depreciation deductions allowable on a straight line basis is taxable as ordinary income. Section 1250(a)(1)(A), IRC. This is called “depreciation recapture”. The maximum period for such recapture in the case of an apartment property encumbered by an FHA-insured mortgage, such as the subject property, is 200 months (16 years and 8 months). That is to say, if the property is held by a taxpayer for 200 months the entire gain realized upon a sale is entitled to capital gain treatment and no part thereof is subject to tax as ordinary income. Section 1250(a)(l)(B)(i), IRC.
Defendant’s expert seemed unaware that ordinary income tax treatment for depreciation recapture is inapplicable to real property with respect to which depreciation deductions are taken on a straight line basis. Section 1250(b)(1), IRC. The depreciation recapture holding period is irrelevant with respect to such property. Moreover, quite apart from depreciation recapture constraints, the only form of accelerated depreciation available to owners of previously owned apartment properties is 125% of straight line depreciation. Section 167(j)(5), IRC.
*100 When defendant’s expert was enlightened with a correct statement of the Federal tax laws, he attempted to de-emphasize his reliance upon Federal income tax treatment as a basis for his recapture component, relying instead upon his unsupported value judgment that 16 years was the outer limit of a recapture period. He made no effort to relate this- assumption to actual market requirements. The relevant inquiry in this connection is to ascertain what the typical investor actually demands and receives in the market place in transactions with willing sellers. New Brunswick v. State of N.J., Div. of Tax Appeals, 39 N.J. 537, 551, 189 A.2d 702 (1963).
The resort by defendant’s expert to the market data approach to valuation fares no better than his income approach. He offers eight sales of allegedly comparable apartment properties in support of his conclusion. I find that none of those sales has probative value. One of them was a transaction between related parties and appears to have been undertaken substantially for income tax purposes; the sales prices of six others were inflated by high mortgages and corresponding thin equity investments; and the tenants paid for their own heat and cooking fuel in the remaining property, a fact which indicates a higher unit value in relation to the value of the subject property, where the owner provides heat and cooking fuel.
Quite apart from the weaknesses of the comparative approach employed by defendant’s expert, I find that the income approach is the most suitable method for determining the true value of the subject property. Our courts have held that the income approach is of preponderant influence in the valuation of apartment properties. Parkview Village Ass’n. v. Collingswood, supra; Helmsley v. Fort Lee, 78 N.J. 200, 394 A.2d 65 (1978), appeal dismissed 440 U.S. 978, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979); Fort Lee v. Hudson Terrace Apts., supra.
In view of the foregoing, I find the true value of the subject property for the years 1976 and 1977 to be $1,212,200, the value determined by plaintiff’s expert.
*101 B. 1978-1979
Plaintiff’s expert employed the income method in the valuation of the subject property for 1978 and 1979, just as he did for 1976 and 1977. Although the amounts differ, his approach to the calculation of gross rent potential, effective gross income and expenses was the same for 1978 and 1979 as it was for the two earlier years. The risk-oriented components of his capitalization rate[5] reflect investor demands for 1978 and 1979, just as they did for the earlier years. The only component which the expert treated differently was the tax rate. He determined an effective tax rate for each of the two later years by application of the Director’s average ratio, promulgated and certified in accordance with N.J.S.A. 54:1 35a et seq., to the actual tax rate.[6] The calculation was made separately for each year. Fairness and consistency both require that the tax component of the capitalization rate be thus calculated where discrimination is in issue. Fort Lee v. Hudson Terrace Apts., supra.
Defendant’s expert concluded that the value of the subject property did not change from 1976 to 1979, and his appraisal purported to cover all the years under review with the same income approach components and the same comparable sales. As his conclusions for 1978 and 1979 suffer from the same infirmities as hereinabove noted with respect to the earlier years, I find that I must reject his determination of value in all particulars.
In view of the foregoing, I find the true value of the subject property to be as determined by plaintiff’s expert, namely, $1,297,900 for 1978 and $1,241,600 for 1979.
DISCRIMINATION
Discrimination relief from the assessments on the subject property is warranted for both 1978 and 1979. N.J.S.A. 54:2 *102 40.4, effective for 1978 and later years provides in pertinent part:
Whenever the (Tax Court) is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall revise the taxable value of the property by applying the average ratio to the true value of the property
The “common level range”, as defined in N.J.S.A. 54:l-35a, is “that range which is plus or minus 15% of the average ratio for that District.” The average ratio, certified by the Director in accordance with the statute, is 80% for 1978 and 94% for 1979. The common level range, also certified, is 68% (lower) and 92% (upper) for 1978 and 79% (lower) and 109% (upper) for 1979.
As the ratio of the assessment of the subject property to its true value as hereinabove determined is beyond the upper limit of the common level range for both 1978 and 1979, I find that the plaintiff is entitled to discrimination relief for both of those years. Accordingly, the assessments will be reduced by application of the appropriate average ratio pursuant to N.J.S.A. 54:2-40.4 to the property’s true value.
In view of the foregoing, judgment will be entered determining the assessments to be as follows:
1976-1977
Land $ 378,000
Improvements 834,200
$ 1,212,200 Total
1978
Land $ 302,400
Improvements 735,900
$ 1,038,300 Total
1979
Land $ 355,300
Improvements 811,800
Total $ 1,167,100

 9% interest, 2.5% recapture, 2.26% actual tax rate (1976-1977 average).

 8.5% interest, 1.26% recapture, 2.5% effective average tax rate.

 Defendant arrives at a true value of $1,886,300 by application of the income approach.

Good management is presumed. American institute of Real Estate Appraisers, The Appraisal of Real Estate 325 (7th Ed. 1978). There is no evidence to rebut this presumption.

 9% interest, 2.5% recapture for 1978; 9.5% interest, 2.5% recapture for 1979.

 $3.139 actual tax rate X 80% = $2.51 effective tax rate for 1978; $2,853 actual tax rate X 94% = $2.68 effective tax rate for 1979.