CRABTREE, J. T. C.
This is a local property tax case wherein plaintiff seeks review of judgments of the Union County Board of Taxation affirming the assessment on plaintiff’s property located at 42-44 West Holly Street, Cranford, New Jersey (Block 176, Lot 1) for tax years 1978, 1979 and 1980. The assessment for all years was:
Land $132,500
Improvements 271,300
Total $403,800
At issue are the true value of the property and the sufficiency and exclusivity of the legislative remedy for assessment discrimination.
The subject of the controversy is a three-story brick walk-up apartment complex sited on one acre of land. The buildings contain 31 apartments and the site is also improved with 14 garages and open parking for eight additional automobiles. The landlord provides heat and water as well as stoves and refrigerators in all apartments.
Defendant municipality is a middle to upper-middle income, predominantly residential, suburban community in which 80% of the dwelling units are single-family residences. Cranford has no *241 rent control ordinance, although many neighboring communities do have some form of rent stabilization. The tenant population of the subject property is reasonably stable and there are substantial variations among rents charged for identical units. For example, in October 1978 monthly rentals for the eight 216-room apartments ranged from $180 to $215, the monthly rentals for the 16 372-room units varied from $173 to $237 and the monthly rentals for the two 472-room units ranged from $236 to $261. Rents charged for apartments of the same size were increased at disparate rates between 1974 and 1978. For example, the percentage increase in those years in rents for the eight 272-room apartments varied from 43% to 74%, while the rent increases in the same period for the 16 372-room units ranged from 39% to 83%. This pattern of variations and increases supports the inference that annual rent increases for the longer-term tenants were kept to a minimum, whereas rents were substantially increased following tenant turnovers.
Plaintiff acquired the property on February 1, 1978 for $250,-000.

Valuation

Plaintiffs expert estimated the true value of the subject property to be $310,000 for 1978, $320,000 for 1979 and $340,000 for 1980. These estimates were predicated solely upon the income approach to value. He placed no reliance upon the sale of the subject property nor did he employ the comparative or summation approaches. His economic rent for all years was based upon an annualization of October 1 pretax-year rent rolls, and his vacancy factor of 27í¡% reflected the difference between the October 1, 1978 annualized rent rolls and actual rent collections for 1979. He extended the same vacancy factor to the other two years, with respect to which the figures for actual rent collections were not available to him. His postulated *242 expenses reflected actual expenses for each year[1], except that expenses for fuel, insurance and utilities were stabilized to prevent distortion, and he added reserves for painting and appliance replacements. To the economic net income thus determined he applied the building residual capitalization method, using interest rates of 9%, 9.5% and 10%, a recapture rate of 3.3% for all years and an effective tax rate calculated by multiplying the actual tax rate for each year by the unweighted ratio promulgated by the Director of the Division of Taxation (Director). He adjusted the actual tax rate for 1978 by ten basis points to reflect the impact of the Tenants’ Property Tax Rebate Act, N.J.S.A. 54:4-6.2, et seq., which requires the owner of multi-family residential property to rebate 65% of qualified tax reductions to the tenants.
Defendant’s expert estimated the true value for all years in issue to be $449,800, an average of the values developed by application of all three valuation approaches.[2] His income approach began with a calculation of economic rent based upon the highest rent charged for each class of apartment unit on October 1, 1978, to which he added $15 a month for each of 13 garages.[3] Deduction of a 1 lh% vacancy and loss factor resulted in effective gross income of $81,924. He then deducted the actual expenses of $25,218 (making no allowance for painting or appliance replacement reserves) and arrived at imputed net income of $56,706. To this amount he applied a capitalization rate, using the building residual method, of 14%, composed of 8.5% return, 2.5% recapture and an effective tax rate of 3%. His postulated tax rate was the product of multiplying the actual *243 1979 rate by the chapter 123 ratio of 92% promulgated by the Director for that year. He made no adjustment in the tax rate for the Tenant’s Property Tax Rebate Act. The expert also assumed that the land assessment reflected true value after application of the Director’s chapter 123 ratio. He therefore divided the land assessment by 92% to arrive at the true value of the land.
The income approach is of preponderant influence in the valuation of apartment properties. Parkview Village Ass’n v. Collingswood, 62 N.J. 21, 297 A.2d 842 (1972); Fort Lee v. Hudson Terrace Apts., 175 N.J.Super. 221, 417 A.2d 1124 (App. Div.1980); G & S Co. v. Eatontown, 2 N.J.Tax 94 (Tax Ct.1980). I find the income approach to be the most suitable method for determining the true value of the subject property. In reaching this conclusion I have considered the market data and cost reproduction approaches utilized by defendant and find them, under the circumstances here present, to be unreliable indicators of value.
Defendant’s method of calculating economic rent is most persuasive and I will accept it. While actual rents paid by tenants of a well-managed apartment project are prima facie representative of economic rent, Parkview Village Ass’n v. Collingswood, supra, the evidence in this case persuades me to the contrary. On the basis of the facts hereinabove found with respect to the variations in rents charged for identical units and the wide range of percentage increases in rents over a four-year period, I conclude that the economic rent for each class of apartment is the highest rent charged therefor, as it appears that the landlord favored his long-time tenants with below-market rents, increasing those rents substantially only when the old tenants vacated the premises and new tenants moved in. It is realistic to anticipate, however, that rent increases in all units to reach the level of economic rent herein found will lead to vacancies and collection losses. Accordingly, I accept the 2V2% vacancy and loss rate posited by plaintiff as a reasonable estimate of the quality and durability of the rents.
*244 The record discloses an approximate 10% annual increase in gross rental income during the years in issue. I therefore find that the economic rent for the subject property, before allowances for vacancy and collection loss, was $72,750 for 1978, $80,830 for 1979 and $88,910 for 1980. To these amounts I will add garage rent, as estimated by plaintiff’s expert, of $2,548 for each of the years 1978 and 1979, and $3,024 for 1980.
Plaintiff’s expense estimates are amply supported by the evidence. For the most part, he relied upon the property’s actual experience and he stabilized those items which tended to fluctuate sharply during the pretax years. Moreover, his reserve allowances for painting and appliance replacement are consistent with sound appraisal principles. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate (3 ed. 1978), 347, 353-355.
Plaintiff’s expert relied upon statistical data published by the American Council of Life Insurance (ACLI) to support his interest and recapture rates, while defendant’s expert offered no documentary support for his capitalization rate. Both experts selected a recapture rate on the basis of the remaining useful economic life of the property, yet neither expert testified about the putative investor’s anticipated holding period. There is, therefore, no way of knowing whether the investor will retain ownership of the property for the balance of its'economic life. I must reject the recapture components posited by both experts.
Viewing the interest and recapture rates as a single, risk-oriented rate, I find that plaintiff’s total rate, separately calculated for each year, is not supported by the data upon which he relies. The ACLI statistics reflect substantially lower returns on net income alone and, indeed, the ACLI data, regarded in their entirety (including average interest rates and the mortgage constants) reflect the benefits of ownership beyond the income stream. The subject property is located in a desirable suburban community of predominantly single-family residences, it enjoys a stable tenant population, the buildings are well maintained and the municipality has no rent control. *245 Moreover, as plaintiff’s expert acknowledged, income tax benefits accompany the ownership of the subject property and the putative investor considers such benefits when he contemplates the acquisition of this kind of property.
Taking all these matters into account, I find that a capitalization rate, including recapture but exclusive of an effective tax rate, of 11.5% is a realistic reflection of investor demands for all years under review.
As indicated above, plaintiff’s expert multiplied the actual tax rate for each year by the Director’s unweighted ratio. To ascertain the effective tax rate, defendant’s expert applied the chapter 123 ratio of 92% to the actual tax rate for 1979. For reasons which will appear hereinafter, I conclude that N.J.S.A. 54:2-40.4 provides plaintiff with an adequate measure of discrimination relief. Consistency and fairness thus require that the chapter 123 ratio be used in the determination of the effective tax rate. See Gaynes v. Edison, 2 N.J. Tax 500, 504 (App.Div.1980).
In view of the foregoing I find the true value of the subject property to be $326,660 for 1978, $357,240 for 1979 and $396,520 for 1980, calculated pursuant to the income method as follows:
1978
Economic rent $ 75,300
Less vacancy and collection loss (2lh%) 1,880
$ 73,420 Effective gross income
Less expenses (all as estimated by plaintiff; management fee at 5% of effective gross income) 26,740
$ 46,680 Effective net income
Capitalized at 14.29%
(11.5% + effective tax rate of
2.79% [3.17 [4] x 0.88]) $326,660
(rounded)
*246 1979
Economic rent $ 83,380
Less vacancy and collection loss (2'/2%) 2,080
Effective gross income $ 81,300
Less expenses (all as estimated by plaintiff; management fee at 5% of effective gross income) 29,500
Effective net income $ 51,800
Capitalized at 14.5%
(11.5% + effective tax rate of 3.00% [3.26 x 0.92])
(rounded) $357,240
1980
Economic rent $ 91,930
Less vacancy and collection loss 2,300
Effective gross income $ 89,630
Less expenses (all as estimated by plaintiff; management fee at 5% of effective gross income 32,690
Effective net income $ 56,940
Capitalized at 14.36%
(11.5% + effective tax rate of 2.86% [3.57% x 0.80])
(rounded) $396,520

Discrimination

The New Jersey Constitution requires that all property within a taxing district be assessed in accordance with the same standard of value. N.J.Const. (1947), Art. VIII, § 1, par. 1. Thus, it has long been axiomatic in this State that where a *247 taxpayer’s property is assessed at a ratio to true value substantially higher than the common level of assessments, or, if there is no such common level, substantially higher than the Director’s average ratio, such taxpayer is ordinarily entitled to a reduction of his assessment down to the common level or Director’s ratio. In re Appeal of Kents, 2124 Atlantic Ave., Inc., 34 N.J. 21, 166 A.2d 763 (1961); Piscataway Associates v. Piscataway, 73 N.J. 546, 376 A.2d 527 (1977). To make out a case of actionable discrimination the taxpayer was required to prove (1) that real property in the taxing district was generally taxed at less than true value, (2) the common level of assessment (or the absence thereof) and (3) the true value of the subject property upon which a common level or Director’s ratio would operate. Continental Paper Co. v. Ridgefield Park, 122 N.J.Super. 446, 300 A. 2d 850 (App.Div.1973). Prior to the enactment of Chapter 123, L.1973, c. 123 (effective for 1978 and later years) a party labored to prove its case by extensive statistical studies introduced through experts. See, e.g., Niktan Realty Co. v. Passaic, 1 N.J.Tax 393, 403-407 (Tax Ct.1980). Chapter 123, specifically N.J.S.A. 54:2-40.4, applicable to proceedings in this court, eliminates the burdensome statistical presentations and reduces the quest for relief to a relatively simple mathematical calculation. The statute provides, to the extent here pertinent, that a taxpayer is entitled to relief whenever (a) the ratio of assessment to the true value of its property is beyond the upper limit of the so called “common level range” (15 percentage points above the Director’s average ratio), or (b) such ratio exceeds the county percentage level (100% in all cases). In either event, relief is provided by application of the Director’s average ratio to the adjudicated true value of the property.
Plaintiff contends that the relief from assessment discrimination provided by N.J.S.A. 54:2 40.4 is inadequate, that sufficient relief can only be afforded through application of the Director’s unweighted, unclassified ratio to the adjudicated true value of the property. In support of his contention he purports to show that the unweighted, unclassified ratio (which he claims to be indicative of the common level prevailing in the taxing district), is substantially lower than the chapter 123 ratio.
*248 Chapter 123 is not the exclusive remedy for assessment discrimination; it merely establishes a rebuttable presumption of a common level as the basis for relief. Diament v. Fort Lee, 3 N.J.Tax 70 (Tax Ct.1981). That presumption can be rebutted by a party demonstrating in any fashion a common level different from a chapter 123 ratio. Devonshire Develop. Assoc. v. Hackensack, 2 N.J.Tax 392 (Tax Ct.1981). But the matter does not end there. The next inquiry is whether relief can be adequately provided by chapter 123; if so, it is constitutionally adequate and a court should defer to the legislative judgment. Murnick v. Asbury Park, 2 N.J.Tax 168 (Tax Ct. 1981). To put it another way, unless the taxpayer shows by a fair preponderance of the evidence that the application of a chapter 123 ratio would have a virtually confiscatory effect, that ratio will be applied as the measure. of relief warranted to vindicate the constitutional right to commensurate treatment in local property taxation. 525 Realty Holding Co. v. Hasbrouck Heights, 3 N.J.Tax 206 (Tax Ct.1981).
The subject property has been assessed in excess of 100% of its true value, as hereinabove determined. Plaintiff is, for that reason, thus entitled to relief under N.J.S.A. 54:2-40.4 by application of the chapter 123 ratio. There remains the question of the adequacy of such relief. To turn the question around, would application of the legislative remedy still leave the taxpayer with a virtually confiscatory assessment? The resolution of that issue requires a close examination of the relationship between the unweighted, unclassified ratio and the ratio promulgated by the Director pursuant to chapter 123.
The chapter 123 ratio is promulgated by the Director as of October 1 of the pretax year. N.J.S.A. 54:l-35a. Plaintiff, however, uses the unweighted, unclassified ratio promulgated as of October 1 of the tax year. Plaintiff’s comparison is inappropriate. The constitutional sufficiency of the statutory remedy for discrimination can only be examined by comparing two ratios promulgated as of the same date. Given the obvious fact of a significant annual appreciation in value of the generali *249 ty of properties in a municipality such as Cranford, and the reflection thereof in a declining average ratio, the use of a ratio promulgated one year later than the ratio with which it is compared in aid of ascertaining the latter’s constitutional adequacy is manifestly unfair and inequitable to defendant and its other taxpayers. When the ratios are realigned so that the unweighted ratio and the chapter 123 ratio are viewed at the same temporal reference point, the quantitative difference between the unweighted, unclassified ratio and the chapter 123 ratio is significantly narrowed. It is narrowed, in fact, to the point where such difference loses all constitutional significance.
I note, in passing, that the unweighted ratio, calculated as of October 1, 1978, is 89% of the chapter 123 ratio computed as of the same date, while the unweighted ratio for October 1, 1979 is 87% of the chapter 123 ratio determined as of that date.
In addition, the unweighted ratio, derived from a mere one-year sales study, is subject to temporary market fluctuations and ascribes inordinate influence to inadequate sales samples in a single year. The Legislature recognized this when it changed the chapter 123 ratio from a one-year, unweighted and unclassified ratio to the classified and weighted ratio, effective for 1979 and later years. See Committee Statement to Assembly Bill 1492, L.1979, c. 51. The new chapter 123 ratio reflects sales over a period of years, with a different weight assigned to each year on a multiple regression basis. The evident legislative design was to promote stability in assessments, and the statute implementing that objective enjoys a strong presumption of constitutionality. Jamouneau v. Harner, 16 N.J. 500, 109 A.2d 640 (1954); New Jersey Ass’n on Correction v. Lan, 80 N.J. 199, 403 A.2d 437 (1979); Murnick v. Asbury Park, supra.
Mathematical precision in the valuation of real property for tax purposes is neither required nor is it attainable. Baldwin Constr. Co. v. Essex Cty. Bd. of Tax., 16 N.J. 329, 108 A.2d 598 (1954); In re Appeal of Kents, 2124 Atlantic Ave., Inc., supra. The same can be said of real property appraising. American Institute of Real Estate Appraisers, The Appraisal of *250 Real Estate (7 ed. 1978), 1. To award plaintiff discrimination relief beyond that provided by chapter 123 in this case would subvert that salutary principle. As Judge Evers remarked in a similar context in 525 Realty Holding Co. v. Hasbrouck Heights, supra:
... At this juncture in the litigation we are dealing not with the per se vindication of constitutional rights but of the measure of relief warranted in guaranteeing those constitutional rights, i.e., that a taxpayer shall not pay more than its fair share of the burden of taxation. In short, the taxpayer here would be granted a preference by virtue of statistical pyrotechnics .... [3 N.J.Tax at 215; emphasis in the original.]
I therefore conclude that plaintiff has failed to overcome the presumption of constitutional adequacy of chapter 123 as a remedy for discrimination. Moreover, plaintiff has not shown that the application of chapter 123 would have a virtually confiscatory effect. Plaintiff’s relief, therefore, is confined to the application of the chapter 123 ratio to the true value as hereinabove determined.
Judgment will be entered adjudicating the assessment to be as follows:
1978
Land $ 95,820
Improvements 191,640
Total $287,460
1979
Land $109,550
Improvements 219,110
Total $328,660
1980
Land $105,740
Improvements 211,475
Total $317,215

The expert did not explain how he managed to obtain actual expense information while the figures for actual rental income were not available for two of the three tax years. As will be seen hereafter, this inconsistency is irrelevant to the court’s findings.

$430,800 by income approach, $455,200 by reproduction approach, $463,-500 by market data approach.

As hereinabove found, there are 14 garages, and that number will be reflected in my calculation of economic rent.

The evidence indicates that the Tenants’ Property Tax Rebate Act is applicable to 1978 by virtue of a tax rate reduction from the base year. Accordingly, the adjustment made by plaintiffs expert to the actual tax rate *246 for 1978 to reflect the impact of that statute is proper and correct. Skytop Gardens, Inc. v. Sayreville, 3 N.J.Tax 187 (Tax Ct.1981). This adjustment increases the actual tax rate from 3.07% to 3.17%.