PARKWAY VILLAGE APARTMENTS CO., PLAINTIFF-APPEL-LANT, v. TOWNSHIP OF CRANFORD, DEFENDANT-RESPONDENT.

Argued March 17, 1986—Decided July 28, 1987.

*Carl G. Weisenfeld* argued the cause for appellant (*Hannoch Weisman,* attorneys; *Mr. Weisenfeld* and *Todd M. Sahner,* on the brief).

*Ralph P. Taylor* argued the cause for respondent.

PER CURIAM.

In this appeal we must determine the proper method of assessing, under the capitalization of income approach, the fair rental value of a large well-managed apartment complex with one-year leases. The Tax Court ruled that the assessment should be based on the present potential rent of the apartments rather than the actual rent of the apartments as of the assessment date, 8 *N.J. Tax* 430 (1985), rejecting the taxpayer's contention that this method conflicted with our decision in *Parkview Village Associates v. Borough of Collingswood,* 62 *N.J.* 21 (1972). In *Parkview,* we held that "in the absence of convincing evidence to the contrary" actual rent in a large well-managed apartment complex with short-term leases is *prima facie* proof of economic rent. *Id.* at 34. The Appellate Division affirmed, 9 *N.J.Tax* 199 (1986). We granted certification, 107 *N.J.* 66 (1986), and now hold that there is insufficient evidence in this case to overcome the *Parkview* presumption. Therefore, the judgment of the Appellate Division is reversed.

I

This appeal centers on the 1983 and 1984 assessments of a garden apartment complex located in the Township of Cranford (the municipality) and owned by Parkway Village Apartments Co. (the taxpayer). The following facts are undisputed: The apartment complex consists of nine two-story buildings, containing a total of one-hundred and fifteen apartment units. It is well-managed and all of its leases are for one-year terms. The taxpayer cannot increase the rents until the leases expire. A more detailed statement is contained in the Tax Court's opinion, *supra,* 8 *N.J. Tax* at 432–33, but the preceding facts are sufficient for this appeal.

For each year in question, the total assessment for the complex was $1,850,000, including land and improvements. *Id.*

at 433. Because the assessed valuation of the property exceeded $750,000, the taxpayer bypassed the Union County Board of Taxation and sought direct review of the assessment by the Tax Court. *See N.J.S.A.* 54:3-21. The court found that the parties had presented sufficient evidence to overcome the presumption of correctness accorded the original assessment. 8 *N.J.Tax* at 434-35. After considering the testimony of the expert witnesses, the court determined that the appropriate method of assessment was the income approach, which is based on an analysis of rental income. *Id.* at 439; *see also Helmsley v. Borough of Fort Lee,* 78 *N.J.* 200, 214-15 (1978) (income method preferable for income-producing property).

Both the taxpayer and the municipality presented expert testimony. The taxpayer's expert testified that the actual rent charged for the apartments should be accepted as the economic rent. He multiplied the actual monthly rent for each apartment by twelve, an exercise that produced annual income of $540,840 for 1983 and $590,580 for 1984. The municipality's expert, however, "stabilized" the rent for each category of apartments by imputing to all apartments the most recent rent charged for an apartment of that category. He thereby calculated the economic rent to be $596,700 for 1983 and $648,580 for 1984.

In a period of inflation, such as the present, the most recent rent will also be the highest rent. Thus the municipality's expert valued all apartments at the highest rental for the category. For example, as of October 1, 1982, five of the sixty-eight five-room duplex apartments were renting for $450, and the remaining sixty-three apartments were renting for less. Nonetheless, the expert concluded that the economic rent for each five-room apartment was $450 per month. The effect of the municipality's expert's method of computation is illustrated in the following table, which sets forth the types of apartments owned by the taxpayer and the number of units rented at the highest level for each type:

| | Total Units | Number of Units Rented at Highest Level on 10/1/82 | Number of Units Rented at Highest Level on 10/3/83 |
|---|---|---|---|
| 3 ½ room | 18 | 2 | 1 |
| 4 room | 2 | 2 | 2 |
| 4 ½ room | 12 | 1 | 1 |
| 5 room simplex | 12 | 1 | 1 |
| 5 room duplex | 68 | 5 | 5 |
| 6 room duplex | 3 | 1 | 1 |
| | 115 | 12 | 11 |

The disparity in the income valuations for 1983 and 1984 produced by the two experts led to differing assessments of the property. The Tax Court accepted the municipality's approach, and determined that the proper basis for assessment was the rent that was theoretically capable of being achieved on the assessment date, even if it was not actually being earned. *Id.* at 440. The court rejected the taxpayer's argument that the stabilization method conflicted with *Parkview Village Associates v. Borough of Collingswood, supra,* 62 *N.J.* 21, and found that the only difference between *Parkview* and the present case was the length of the leases. *Id.* at 441.

## II

The ultimate objective in assessing real estate is to derive the fair-market value of the property, an undertaking that in the case of rental property leads to a consideration of gross rental income. Although both experts employed various methods of evaluation, the Tax Court found the income approach to be "most persuasive." 8 *N.J. Tax* at 439. We agree. The income method is generally preferred for assessing income-producing property. *Helmsley v. Borough of Fort Lee, supra,* 78 *N.J.* 200; *Rudd v. Township of Cranford,* 4 *N.J. Tax* 236, 243 (1982).

Central to an income analysis is the determination of the economic rent, also known as the "market rent" or "fair rental value." In *Parkview Village Associates v. Collingswood, su-*

*pra*, 62 *N.J.* at 34, in determining fair rental value for purposes of the capitalized income method of property valuation, we held:

> In the absence of convincing evidence to the contrary the current ongoing income scale of a large, well-managed apartment project like this, functioning as customary with leases of relatively short length, should be deemed *prima facie* to represent its fair rental value for purposes of the capitalized income method of property valuation. A court or taxing agency should be most hesitant to find that the tenants of a residential property being operated commercially are being charged inadequate rent.

Our holding was based on the belief that landlords of well-managed apartment complexes maximize their profits and minimize their expenses. We also concluded that this approach "conduces to the objective of relative stability of assessments which we have heretofore held to be basic to sound tax assessment policy." *Id.* at 34, 35.

This principle has been consistently followed. In *Glen Wall Associates v. Wall Township*, 99 *N.J.* 265, 275–76 (1985), we specifically reaffirmed our holding in *Parkview*. The taxpayer in *Glen Wall* did not own the property on the assessment date and did not have the actual rent roll for the applicable assessment date. Accordingly, neither the taxpayer nor the municipality argued that the actual rent on assessment date was equivalent to economic rent. Due to these peculiar circumstances, the taxpayer's expert used the January 1, 1980, actual rent roll, which he "stabilized" based on his assumption "that the actual rent for the apartments leased shortly before the assessment date was the economic rent." *Glen Wall Assocs. v. Wall Township, supra*, 99 *N.J.* at 275. Additionally, the taxpayer's expert "had found the stabilized actual rent of the complex to be comparable to the rent of other complexes within the general area." *Id.* at 275.

We reject the municipality's contention that *Glen Wall* supports their position. In *Glen Wall* we determined that the taxpayer's use of "stabilized actual rent was a reasonable method of determining the economic rent of the complex and was supported by sufficient and competent evidence in the record." *Id.* at 275. In reaching our conclusion, we specifically

relied on *Parkview* and, indeed, disapproved the Tax Court's opinion because it "disregarded the presumption that actual rent equals economic rent in a well-managed apartment complex." *Id.* at 276. Thus, in *Glen Wall* we continued to respect the *Parkview* rule, as has the Tax Court. *See, e.g., Frieman v. Randolph Township,* 8 *N.J. Tax* 264, 271 (1986) (The "proper method of arriving at the economic rent for property in a vacancy decontrol transition period, where there is proof of competent management, is to annualize the actual rents as of the assessment date."), aff'd, 216 *N.J.Super.* 507 (App.Div. 1987); *Jefferson House Investment Co. v. Chatham,* 4 *N.J. Tax* 669, 676–77 (1982) ("[T]he gross rental value of the property on the respective assessing dates was that testified to by taxpayer's expert, his figures being based on the actual rent rolls and there being no convincing testimony that the management was not charging market rent."); *G. & S. Co. v. Eatontown,* 2 *N.J. Tax* 94, 98 (1980) ("In the absence of convincing contrary evidence, actual rents paid by tenants of a well-managed apartment project are *prima facie* representative of economic rent.") (footnote omitted), aff'd, 6 *N.J. Tax* 218 (App.Div.1982).

In *Parkview* we presumed that the actual rent of a well-managed apartment complex is equivalent to economic rent only absent "convincing evidence to the contrary." 62 *N.J.* at 34. We explained that the municipality can overcome the *Parkview* presumption if it proves by "convincing evidence" that (1) the leases are not economic because the property is not well managed, *id.;* (2) the leases are not economic because they are old, long term leases, *id.;* or (3) the leases are not economic as shown by a comparison with at least four comparable apartment properties. *Id.* at 30. None of these exceptions is applicable to this case. Indeed, in this case, there is no "convincing evidence" that the taxpayer is not maximizing his rents or is favoring long-term tenants. *Cf. River Drive Village v. Garfield,* 7 *N.J. Tax* 632, 639, 640 (1985) ("[O]ther evidence leads me to conclude that the owner made a decision to favor long time tenants with below market rents. Plaintiff has

therefore chosen not to maximize rent receipts."); *Rudd v. Cranford Township*, 4 *N.J.Tax* 236, 243 (1982) (The Tax Court found that the municipality had overcome the *Parkview* presumption, and that the economic rent for each class of apartments was the highest rent charged because the facts disclosed "that the landlord favored his long-term tenants with below market rents, increasing those rents substantially only when the old tenants vacated the premises and new tenants moved in.")

In this case, the municipality did not produce any comparables as did the municipality in *Maple Court Associates Ltd. v. Ridgefield Park*, 7 *N.J. Tax* 135, 152 (1984), where the tax court found "sufficient evidence from his [municipality's expert] market study of comparables that the actual rents offered by the taxpayer are not economic." Nor is this a case where the actual rent roll figures are in dispute or were determined in a "bizarre" manner as they were in *Rodwood Gardens Inc. v. Summit*, 188 *N.J.Super.* 34, 42 (App.Div.1982). In *Rodwood,* the taxpayer's expert ignored entirely the economic status of the property in 1976 (the year in issue) but attempted to annualize the increased figures for "the partial years of 1975 and 1977," and then by adding these "annualized figures" with the 1978 and 1979 income data and dividing by four obtained what he termed "the average actual rental collections for the 4–year period." The Appellate Division properly rejected this "bizarre" calculation as not supported by the record.

Unlike the evidence presented to the courts in *River Drive Village v. Garfield, supra,* 7 *N.J. Tax* 632; *Rudd v. Cranford, supra,* 4 *N.J. Tax* 236; *Maple Court Associates Ltd. v. Ridgefield, supra,* 7 *N.J. Tax* 135; and *Rodwood Gardens Inc. v. Summit, supra,* 188 *N.J.Super.* 34, the municipality in this case presented no evidence of wide-range or percentage increases in rents during the applicable period, no analysis of actual rent increases at the apartment complex for each type of apartment unit during the applicable period, no evidence of when the leases commenced or expired, and no proof of compa-

rable rents in other apartment complexes in this area. Indeed, the only evidence that the Appellate Division majority relied on to overcome the *Parkview* presumption and to support its finding that "potential rent" equals "economic rent" was the municipality's expert imputation of the highest and most recent rent charged for each category of apartments to all the apartments of that category. But the only reason that some apartments rented for less than others was the timing of the leases; the latter leases produced the highest income. Thus the municipality's expert assumed without sufficient justification that the actual rent roll of a well-managed apartment complex having short term leases was not representative of economic rent, and that the highest rent achieved as of the assessment date of any apartment in each category was the economic rent of all the apartments in that category. The result of this methodology is that approximately ninety percent of the rentals in this well-managed apartment complex were "stabilized" upwards. *See ante* at 269–270.

The municipality has simply not adduced "convincing proof" sufficient to overcome the *Parkview* presumption. Equating "economic rent" with "potential rent," rather than actual rent, leads effectively to the demise of the *Parkview* rule. Under this equation, actual rent virtually never would be equivalent to economic rent. Actual rent would equal economic rent only under the highly unlikely scenario that all the leases in an apartment complex expire on the same day, or in a stagnant economy where there are no rent increases. The only relevant rent would be the highest and most recent rent for each category of apartments.

We continue to believe that absent convincing evidence to the contrary, the *Parkview* rule achieves a fairer, sounder, and more uniform tax assessment policy. Taxes are assessed on an annual basis. Each annual assessment of property is distinct from the assessment of prior or subsequent years. *In re Appeal of East Orange,* 103 *N.J.Super.* 109, 113 (1968); *see Parkview Village Assocs. v. Collingswood, supra,* 62 *N.J.* at 29

("The question here is the fair rental value, looking forward as of October 1, 1967, not 1968, 1969 or thereafter. Hindsight as to later leasing arrangements is irrelevant."). Our "approach contemplates that the assessor, in each year during the transition period from rent control to free market rentals, would reassess the property based on the charged rentals on each assessing date until the transition is substantially complete." *Frieman v. Randolph Township, supra,* 8 *N.J.Tax* at 271. The assessor should reassess taxpayer's property every year based on the then actual rent roll (assuming, of course, that the building continues to be well-managed and under short-term leases).

The fairness and integrity of an assessment based on actual rather than potential rent is manifest in this case. Of the one-hundred and fifteen apartments owned by the taxpayer, only twelve percent in 1982 and eleven percent in 1983 were rented at the highest rent. It is therefore hard to imagine how to justify the municipality's presumption that the highest rent represents "economic rent." Additionally, we note that if the "potential" rent were to be considered, so should the "potential expenses." The compounded speculation inherent in that approach portends untrustworthy calculations and substantial problems of proof for both the taxpayer and the municipality, resulting in increased costs in terms of time and money for both.

Furthermore, consideration of "potential rent" and potential "expense" goes against the well established principle stated in *City of New Brunswick v. New Jersey Div. of Tax Appeals,* 39 *N.J.* 537, 541 (1963), that "as a practical matter there must be a large measure of stability in the assessment of property." In *Parkview Village Associates v. Collingswood, supra,* 62 *N.J.* at 34, we cited this need for stability as a reason for our approach that absent evidence to the contrary the actual rent of a large well-managed apartment complex will be equivalent to fair rental value. "That approach ... conduces to the objective of relative stability of assessments which we have heretofore

held to be basic to sound tax assessment policy." *Id.* Stability of assessment is still an important factor to be considered in determining sound tax assessment policy. *See Jefferson House Investment Co. v. Chatham, supra,* 4 *N.J. Tax* at 676.

 We reaffirm the *Parkview* rule that in the absence of convincing evidence to the contrary, the actual rent of a well-managed apartment complex functioning with customary leases of relatively short length is *prima facie* representative of economic rent for the purpose of capitalized income of property valuation. Evidence, like that adduced in this case, that an apartment in a specific category is rented at a higher rent than the other apartments in that category is not sufficient evidence, by itself, to overcome the *Parkview* presumption. Under such circumstances, actual rents are presumptively more representative of economic rent than potential rent, and an assessment based on actual rents reflects a fairer and more stable tax assessment policy.

The judgment of the Appellate Division is reversed and the matter is remanded to the Tax Court for further proceedings consistent with this opinion.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*For affirmance*—None.