PER CURIAM.
Defendant, Towp of Seeaucus, appeals in this consolidated matter from Tax Court judgments reducing the real property assessment on the Meadowlands Hilton Hotel for the years 1991 and 1992. The original 1991 and 1992 assessments for land and improvements for the three lots on which the hotel is located was $26,535,700. Seeaucus conceded that the property had been over-assessed, and its appraiser, Mr. BuchalsM, determined that the land and improvements should be assessed at $14,800,000 for 1991 and $14,000,000 for 1992. Plaintiff, through its expert, Mr. Hiller, sought a much lower value and urged that the assessments should be $5,937,200 for 1991 and $5,420,200 for 1992. The Tax Court judge, Judge Small, in a twenty-five page oral opinion determined the 1991 value to be $7,953,800 and the 1992 value to be $7,474,-500.
The hotel had been built by Hartz Mountain Industries, Inc. and opened in January 1978. The hotel was managed by Hilton Hotels Corp. for Hartz Mountain as a Hilton Hotel. In 1986, Hartz Mountain sold the hotel and assigned the Hilton Management agreement to Howco Investment Corp. for $26,200,000. Howco was the owner of the hotel on October 1, 1990, the assessment date for 1991, but had defaulted on its mortgage payments to plaintiff, The Equitable Assurance Society of the United States. In March 1991, Howco transferred the hotel and assigned the Hilton Management agreement to plaintiff by a deed in lieu of foreclosure. Therefore plaintiff was the owner of the hotel on October 1,1991, the 1992 tax assessment date.
*465 To complete the history of the property, the hotel was sold by plaintiff in June 1993 to Metrostate Investment Corp. for $5,500,-000.
Between the 1978 sale to Howco and the eventual sale to Metrostate, there had been sharply declining annual net income to the point that in 1989 the hotel generated no net income at all. This continued through 1992. Defendant ascribes the cause of the net income decline to the fact that the hotel, which had little significant competition in the immediate area prior to 1986, began to face stiff competition after 1986, when several newer hotels were built in the area, offering greater amenities, more modem physical plants, and easier access both to the Meadowlands Sports Complex and New York City. Plaintiffs expert found the hotel to have been efficiently managed and properly maintained during the subject tax years. Judge Small accepted this reasoning and in his opinion agreed with Hiller that the bad results with respect to net income were “due to causes other than bad management, ie., an old physical plan, an awkward layout, bad location, general downtrend in the economy and increased competition from newly-built hotels.”
Defendant’s expert, however, while also agreeing that there had been a substantial reduction due to these factors, ascribed the balance of the income loss to either mismanagement or poor management. He opined that the “decline ... in that incredible amount of 21 million dollars over roughly a seven year term [1987-1993] cannot be market related . . . .” He further asserted that an unbiased appraiser could not conclude that the “sale of this property at the low number it sold for in ’93 was due simply to market factors.” He argued that there was inefficient management of the hotel, caused in part by the conflict between the owners and managers which, among other things, led to a failure to invest in the replacement of the hotel’s furniture, fixtures and equipment and hampered the hotel’s ability to compete with the nearby newer and more modern hotels.
The Tax Court judge assessed both the Hiller and Buchalski appraisals and generally sided with the valuations provided by *466 Hiller, although, significantly, the judge’s final valuations were approximately thirty-five percent higher than Hiller’s proposed valuations and fifty-three percent lower than those proposed by Secaucus.
The legal underpinning for the judge’s analysis was the “Parkview presumption,” established in Parkview Village Assocs. v. Collingswood, 62 N.J. 21,34,297 A.2d 842 (1972), and reiterated in Parkway Village Apartments Co. v. Township of Cranford, 108 N.J. 266, 272, 528 A.2d 922 (1987). This doctrine, originally stated as applicable to apartment houses, is as noted by the Tax Court, also applicable to the valuation of a hotel. See Glenpointe Assocs. v. Township of Teaneck, 10 N.J.Tax 380, 391 (1989), aff'd, 12 N.J.Tax 118 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990). The Supreme Court explained the Parkview presumption as follows:
In the absence of convincing evidence to the contrary!,] the current ongoing income scale of a large, well-managed apartment project like this, functioning as customary with leases of relatively short length, should be deemed prima fade to represent its fair rental value for purposes of the capitalized income method of property valuation. A court or taxing agency should be most hesitant to find that the tenants of a residential property being operated commercially are being charged inadequate rent . . . . Readily to be distinguished is the case of a taxpayer owning commercial property tied to a long term lease made long before the current assessing date, where the present rent may well be out of line with current fair rental value.
[Parkview, 62 N.J. at 34-35, 297 A.2d 842.]
In Parkway Village, the Court summarized the Parkview presumption as follows:
In Parkview we presumed that the actual rent of a well-managed apartment complex is equivalent to economic rent only absent “convincing evidence to the contrary.” We explained that the municipality can overcome the Parkview presumption if it proves by “convincing evidence” that (1) the leases are not economic because the property is not well managed, (2) the leases are not economic because they are old, long term leases, or (3) the leases are not economic as shown by a comparison with at least four comparable apartment properties.
[108 N.J. at 272, 528 A.2d 922 (citations omitted).]
The Court reiterated that for the purpose of the capitalized income basis of property valuation, and “in the absence of convincing evidence to the contrary, the actual rent of a well-managed apartment complex functioning with customary leases of relatively *467 short length is prima facie representative of economic rent . . . .” Id. at 276, 528 A.2d 922.
In these cases, as well as in Glenpointe, supra, applying this presumption to hotels, 10 N.J.Tax at 390-91, the analysis solely concerned the income component of the valuation. Little if any mention was made of the subject property’s expenses. But the Parkview/Parkway/Glenpointe line of cases does not totally ignore the issue of expenses. The Tax Court in Parkway noted that when the Parkview presumption is used to ascertain economic rent, the expenses also must be considered, but not necessarily at the level of the actual expenses incurred by the owner. Rather, the expenses should be considered when they were “within normal operating limits.” Parkway Village Apartments v. Cranford Township, supra, 8 N.J.Tax 430, 441 — 42 (1985), aff'd, 9 N.J.Tax 199 (App.Div.1986), rev’d on other grounds, 108 N.J. 266, 528 A.2d 922 (1987). Implicit in the Supreme Court’s analysis in Parkway Village was that the rule would apply to “a well-managed apartment complex.” 108 N.J. at 276, 528 A.2d 922 (emphasis added.) Presumably, if the rentals were driven by market forces but expenses were unusually high, an adjustment must be made to fit the “well-managed” standard.
Defendant here attacks the management of the hotel. Specifically, defendant notes that the management contract provided fees to Hilton and its successor based upon a percentage of gross revenue, and therefore there was no economic incentive to hold down expenses. This, however, was recognized by the Tax Court judge, who concluded after examining the management and expenses “that the municipality has not met its burden of proving bad management, and, accordingly, I will look at the subject as a comparable for itself.” He later stated that the “burden of establishing by convincing evidence that a subject property is badly managed and not a comparable for itself is so great that there is no reported tax case in New Jersey where a Court has found bad hotel management.”
Nevertheless Judge Small specifically reviewed “the facts on which Secaucus’ expert based his conclusion of bad management, *468 namely, failure to refurbish, change of management firms from Hilton to Interstate, bickering between Hilton and Equitable owners and managers, discrepancies between operating results in reports prepared by or for the owners and ... closing of [the] gourmet restaurant.” The judge noted that the hotel’s difficulties were not caused by bad management, but rather by design problems and functional obsolescence. He noted that the guest rooms had no individual thermostats, the hallways were not centrally heated or cooled, and there was only a small health club and an outdoor pool, while recently built hotels had larger health clubs and indoor pools. In addition, the parking was poorly located. Most importantly, in the twelve years since the hotel’s construction, the immediate market area had been saturated, with over 1500 rooms being constructed since 1986.
The court accepted plaintiffs factual position that the hotel was well run, given these problems of obsolescence. The judge noted that “furniture and fixtures were being upgraded on a phase-basis in the hotel,” and that in changing managers, the owners were trying to improve on weak results. Both Hilton and Interstate were experienced hotel managers, with the alleged “bickering” being only “the natural tension between manager and owner.” With regard to actual expenses for rooms, food and beverages, the judge found Mr. Hiller’s figures for both years to be the more accurate. An to undistributed operating expenses, the judge noted the similarity of expenses and rejected defendant’s arguments that the similarity was coincidental since they came from different economic assumptions. The judge applied the agreed-upon three percent management fee, and accepted Buchalski’s two and a half percent return on furniture, fixture and equipment factor with a seventy percent depreciation, although the court applied the eleven percent capitalization rate suggested by Hiller. The judge further explained his use of Hiller’s general capitalization rate of 12.93 percent (inclusive of taxes) for 1991 and 13.03 percent for 1992.
In short, Judge Small did not blindly accept Hiller’s appraisal, nor did he refuse to consider adjustments necessary to permit the *469 application of the Parkview presumption to this case. The judge made factual findings that were at odds with Secaucus’ claims that factors other than functional obsolescence, problems of access and increased competition caused the rapid decrease in value of this property. The court recognized and explained why the actual figures rather than those generated by industry standards should be used to value the hotel. The judge stated:
The subject cannot be valued as if it were one of the more modem hotels without appropriate adjustments. The simple failure to refurbish up to brand new standards [is] not necessarily a reflection of bad management, but may be an acceptance of the fact that as a hotel ages, upgrading the personal property in an antiquated hotel will not bring a proper rate of return and at a certain point in the life of a hotel, upgrades should be taken with a realistic attitude towards the position of an aging hotel in a more modem market.
Judge Small recognized that the valuations suggested by Buchalski did not comport with the judge’s “sense of the market which, for a brand new, first class hotel would be something substantially greater.” He therefore concluded that “when faced with actual figures for the subject as opposed to idealized figures of competitive hotels, this Court must rely on the more accurate numbers absent some explanation and adjustment by the expert using industry norms to take account of what are clearly physical, locational and competitive disadvantages of the subject, vis-a-vis, [its competitors].”
We recognize the unique role of the Tax Court in determining issues such as those before us. As noted in Glenpointe Associates v. Township of Teaneck, 241 N.J.Super. 37, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990): “The judges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them.” Id. at 46, 574 A.2d 459. See N.J.S.A. 2B:13-6b; see also Pine Street Management Corp. v. City of East Orange, 15 N.J.Tax 681, 688 (App.Div.1995). Our scope of review in a case such as this “is limited to determining whether the findings of fact are supported by substantial credible evidence with due regard to the Tax Court’s expertise and ability to judge credibility.” Phillips v. Township of Hamilton, 15 N.J.Tax 222, 226 (App.Div.1995), *470 quoting Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J.Super. 91, 94, 492 A.2d 1026 (App.Div.1985). See also Romulus Development Corp. v. Township of Weehawken, 15 N.J.Tax 209, 211 (App.Div.1995); Ford Motor Co. v. Township of Edison, 127 N.J. 290, 311, 604 A.2d 580 (1992).
We have carefully considered Secaueus’ arguments that the Parkview presumption should be inapplicable in this case because of excessive expenses and management problems. We are nevertheless convinced that the Tax Court judge understood the ramifications of these issues and made factual determinations resulting in adjustments that he deemed appropriate. We therefore reject Secaueus’ argument that the Tax Court made a fundamental error in law that would justify this court to substitute its views for the conclusions of the Tax Court judge. Accordingly, the valuation judgments concerning the subject property for the years 1990 and 1991 are affirmed substantially for the reasons stated by Judge Small in his oral opinion of September 6,1995.