PER CURIAM.
Taxpayer appeals from a Tax Court judgment finding the true value of the subject property to be $15,269,000 for 1993, $15,069,-700 for 1994 and $15,026,100 for 1995, and affirming the assessments under review. First Republic Corp. v. Borough of East Newark, 16 N.J. Tax 568 (Tax 1997). We now affirm.
The assessed property is a collection of multistory, brick, mill-style buildings with 1,133,774 square feet of leasable space. The structures were built in the late nineteenth and early twentieth centuries, and the lots on which they are located, including parking areas, total 13.45 acres. Most of the leased space is used for light manufacturing. Other uses include office, outlet retail, and warehousing.
Each party presented the report and testimony of an appraiser. Each appraiser established the property’s value through capitalization of net operating income. See Parkway Village Apartments Co. v. Township of Cranford, 108 N.J. 266, 270, 528 A.2d 922 (1987) (citing Helmsley v. Borough of Fort Lee, 78 N.J. 200, 394 A.2d 65 (1978)). The establishment of net operating income requires a determination of the property’s economic rent, or “fair rental value,” Parkway, supra, 108 N.J. at 270, 528 A.2d 922, plus miscellaneous and additional income. Economic rent may differ from actual rent. Parkview Village Assoc, v. Borough of Collingswood, 62 N.J. 21, 29, 297 A.2d 842 (1972). Economic rent is adjusted downward in light of anticipated vacancy and collection losses to yield effective gross income. Operating expenses are deducted from effective gross income to *534 reach net operating income. The taxpayer challenges the Tax Court’s findings regarding all of these elements. The court, however, utilized the taxpayer’s capitalization rate, and it is not an issue on appeal.
Actual income “is a significant probative factor in the inquiry as to economic income.” Id. at 30, 297 A.2d 842. The taxpayer’s expert reported the following rent collected and additional income from parking, electric and water for relevant years:
Rent Collected Additional Income Total
1991 3,078,667 263,941 3,342,608
1992 2,116,028 229,256 2,345,284
1993 2,433,544 344,974 2,778,518
1994 3,192,431 454,394 3,646,825
The taxpayer’s expert established actual average annual vacancy rates of 19.35% for 1991, 29.02% for 1992, 32.08% for 1993, and 15.79% for 1994.
It is apparent from the income and vacancy figures that negative macro-economic factors impacted the property’s 1992 and 1993 performance. The property’s performance in 1994 reflected an improved economic climate.
The taxpayer’s expert used an economic rent of $3.23 per square foot of leasable space for a total potential gross income of $3,724,703. This was based on his analysis of the existing leases. The borough’s expert opined that economic rent was $3.50 per square foot. He relied on more recent leases and, in addition, factored in automatic rent increases contained in them.
The taxpayer’s expert stabilized additional income at $350,000, while the borough’s appraiser used $566,000. The latter figure included expense items that tenants had to pay the landlord. The expert testified that these “pass through” expenses were included in operating expenses. The borough’s appraiser adopted the more *535 recent vacancy factor of 15%, while the taxpayer’s expert used 20.99%.
The appraisers differed markedly regarding operating expenses. The taxpayer posited expenses at $2,205,544, while the borough’s appraiser stabilized expenses at $1,851,096.
The following charts represent the conflicting opinions:

Taxpayer’s Income Approach Summary

Potential Gross Income $3,724,703
Additional Income ( + ) 350,000
Vacancy and Rent Loss (20.99%) (-) 781,656
Effective Gross Income_(=) $3,293,047
Operating Expenses (-) $2,205,554
Net Operating Income
(=) $1,087,493
Tax Year Net Income Cap Rate Value
1993 $1,087,493 13.61% $7^90,397
1994 $1,087,493 13.78% $7,891,821
1995 $1,087,493 13.83% $7,863,290
The expert then rounded the value to $8,000,000 for 1993, and $7,900,000 for both 1994 and 1995.

Borough’s Income Approach Summary

Potential Gross Income $3,968,213
Additional Income ( + ) 566,888
Plus parking income (+) 20,000
Plus land rent (+) 67,500
Vacancy and Rent Loss(15%) (-) 693,390
Effective Gross Income (=) $3,929,210
Operating Expenses (-) $1,851,096
Net Operating Income (=) $2,078,114
*536 Capitalization at 13.13%: (10.5% plus average effective tax rate of 2.63%)
Tax Year Net Income Cap. Rate Value
1993-95 $2,078,114 13.13% $15,287,218
The expert then rounded the value to $15,827,000.
The major differences on the income side of the analysis are in “Potential Gross Income,” “Additional Income,” and the vacancy rate. The borough’s expert’s operating expenses were $354,458 less than the taxpayer’s expenses. A major difference in the expense figure is due to the borough’s expert’s rejection of the taxpayer’s actual expense items which appeared to be nonrecurring, such as asbestos removal, or in the nature of capital renovations. For example, 1991 actual expenses included $145,211 in “electrical repairs,” $417,533 for “repair carpentry,” and $308,774 for “asbestos removal.” Expenses for 1992 included $465,685 for “asbestos removal.” The borough’s expert substituted an annual 2% expense allowance for repairs and an additional 2% for maintenance.
The court found the borough’s evidence to be more persuasive.
We recognize the unique role of the Tax Court in determining issues such as those before us. As noted in Glenpointe Assoc. v. Township of Teaneck, 241 N.J.Super. 37, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990), “[t]he judges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them.” Id. at 46, 585 A.2d 392. See N.J.S.A 2B:13-6b; see also Pine St. Management Corp. v. City of East Orange, 15 N.J.Tax, 681, 688 (App.Div.), certif. denied, 144 N.J. 172, 675 A.2d 1121 (1996). Our scope of review in a case such as this “is limited to determining whether the findings of fact are supported by substantial credible evidence with due regard to the Tax Court’s *537 expertise and ability to judge credibility .” Phillips v. Township of Hamilton, 15 N.J.Tax, 222, 226 (App.Div.1995) (quoting Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J.Super. 91, 94, 492 A.2d 1026 (App.Div.1985)). See also Romulus Dev. Corp. v. Township of Weehawken, 15 N.J.Tax, 209, 211 (App.Div.1995); Ford Motor Co. v. Township of Edison, 127 N.J. 290, 311, 604 A.2d 580 (1992).
With a few exceptions, the taxpayer’s contentions on appeal are attacks on the court’s credibility decisions and the weight of the evidence. We are persuaded that the court’s findings and conclusions were not arbitrary or unsupported in the evidence, particularly in light of the “Tax Court’s expertise and ability to judge credibility.” Phillips v. Township of Hamilton, supra, 15 N.J.Tax, at 226 (quoting Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J.Super. 91, 94, 492 A.2d 1026 (App.Div.1985)).[1] Accordingly, we affirm substantially for the reasons expressed below.
The taxpayer contends that the court erred in admitting a borough exhibit and in not permitting cross-examination of the borough’s expert regarding alleged violations of the Uniform Standards of Professional Appraisal Practice. The taxpayer also argues that the court “should have given little weight to [the borough’s expert] ... because [his analysis] was not included in his appraisal report.” These contentions are without merit. R. 2:ll-3(e)(l)(E). The court’s decisions in those respects were well within its discretion, and we perceive no likelihood of an unjust result.
Affirmed.

 The Supreme Court recently reminded us, in a domestic violence case, that "appellate courts should accord deference to ... factfinding” by tribunals of special jurisdiction and expertise. Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998). Cf. Brady v. Board of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997) (observing that the judicial capacity to review an agency’s factfinding is limited). *547 1 Plaintiff devoted considerable time, in its direct case and on cross-examination, attempting to establish that the location of the site for office use was inferior because of the lack of immediate access to major highways. I make no finding on this issue because, even if I were to accept plaintiffs position, my analysis would be unaffected. Plaintiff failed to present any evidence, such as rent or sales price comparisons, which would enable the court to quantify the impact of such alleged inferiority. In any event, the location of substantial office *548 development in the vicinity of the subject property suggests that its location is not inferior.