SMALL, J.T.C.
For 1998, the apartment house at 299 South Harrison St., Block 722, Lot 3, in East Orange, New Jersey, was assessed as follows:
Land $168,600
Improvements . 606,400
Total $775,000
For 1998, the chapter 123 ratio for the City of East Orange was .2605, with upper and lower limits of the common level range of .2996 and .2214. N.J.S.A. 54:1-35a, N.J.S.A. 54:51A-6.
Plaintiff has taken a direct appeal to this court. N.J.S.A. 54:3-21, R. 8:3-5(a)(3).
Each party has submitted the testimony of an expei*t and a report on which the expert relies. 'Both experts rely primarily on *567 the income approach to value. Plaintiffs expert also submitted a comparable sales analysis.
Prior to trial, the parties stipulated that, for purposes of the income approach to value, the total expenses of operating the building were $404,300. They also agreed that the capitalization rate to be used was .1587. Thus, the only issue for trial (with regard to the income approach) was effective gross income.[1]
The two experts’ different approaches to determining effective gross income resulted in substantially different conclusions of value. Plaintiffs expert opined that the appropriate value of the property on the assessing date was $1,850,000. Defendant’s expert’s conclusion was $2,860,000.
Plaintiffs expert’s opinion of effective gross income was $722,-184, the actual collected income from the property for the calendar year 1997 (the year which includes October 1, 1997, the assessment date for the 1998 assessment).
Defendant’s expert calculated effective gross income by calculating an adjusted monthly rental income'of $74,765.57, based on the October 1, 1997 rent roll for 118 units. (Plaintiffs rent roll for October 1, 1997 indicated $77,891.72 for 120 apartments, with 17 *568 units vacant, and $67,497.72 for the apartments actually rented). Defendant’s expert multiplied the monthly rent or $74,765.57 by 12 months and calculated annual potential gross income of $897,-187. From that number, he subtracted $71,775, representing a combined 5% vacancy loss and a 3% collection loss, and then added parking income of $14,400, for a total of $839,812.
Neither expert did an analysis of comparable rents to determine a market rent.
The sole issue to be addressed by this court is which method of determining effective gross income is more reliable in this case.
It is of course settled that gross rental income for purposes of applying the capitalized income approach to valuation of property is to be taken at “fair rental value,” professionally termed “economic” rent or income, if that differs from current actual rental. However, actual income is a significant probative factor in the inquiry as to economic income.
Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area. The essential, however, is a plurality of comparables. One authority suggests that if at least four comparable properties are properly analyzed, a basis for a reliable rent schedule for the subject apartment house may be made. The reason for requiring a reasonable number of comparables is obvious. Postulating that the economic rent for property A is X dollars per unit (rather than X minus Y, which A is now charging) on the basis of the mere fact that assumedly similar property B is charging X dollars simply begs the question as to which of the two, if either, is charging economic rent. What is missing is a sufficient sampling of comparable area rents to provide a reliable criterion. The argued unavailability of a sufficient number of comparables cannot overcome the basic defect of relying on only one.
[Parkview Village Assocs. v. Collingswood, 62 N.J. 21, 29-30, 297 A.2d 842 (1972). (emphasis added) (citations omitted).]
In the absence of convincing evidence to the contrary the current ongoing income scale of a large, well-managed apartment project.. .functioning as customary with leases of relatively short length, should be deemed prima facie to represent its fair rental value for purposes of the capitalized income method of property valuation.
[Id. at 34, 297 A.2d 842.]
Plaintiff asserts that its method of using actual collected rents is consistent with the holding in Parkview Village, supra. The Supreme Court cited, and quoted with approval, Parkview and several other cases in reaffirming the principle that in the absence of contrary evidence, annualized actual rents are the *569 economic rent of a property. Parkway Village Apartments Co. v. Cranford Tp., 108 N.J. 266, 271-73, 528 A.2d 922 (1987).
But plaintiff glosses over the fact that in each of those cases cited by our Supreme Court in Parkway Village, supra, the courts used actual rent rolls to conclude a potential gross income and then subtracted a market vacancy and rent loss allowance. Those courts did not, as plaintiff would have me believe, use actual collected rents in arriving at effective gross income. To do so without confirming that the actual rents were market rents and the actual vacancy and rent loss were market vacancy and rent loss would value the leased fee of the subject property as opposed to the fee simple interest. See The Appraisal of Real Estate, supra, at 8, 137-38, 535, and footnote 1 of this opinion. Although those values may be identical, they need not be so. And in New Jersey, it is the fee simple interest which is assessed for property tax purposes. N.J.S.A. 54:4-2.25, :4-23. Furthermore, as is shown below, the subject property had an unusually large number of apartments which were withheld from the market.
The standard method for calculating value based on the income method is to calculate effective gross income by subtracting a vacancy and rent loss allowance from adjusted scheduled rent. See The Appraisal of Real Estate, supra, at 482-90.
By compressing the calculation of effective gross income, which is usually made by subtracting a vacancy and rent loss allowance from potential gross income, into the selection of actual rents received, plaintiffs expert has not made explicit the actual vacancy and collection loss allowance of 22.7%. Plaintiffs rent roll for October 1997 is $77,891.72. (See plaintiffs expert’s report “Subject Rent Roll”). Multiplying that amount by 12 months, yields a potential annual gross income of $934,700. The effective gross income used by plaintiffs expert is $722,184. The difference is $212,516, or 22.7% of $934,700. Plaintiffs own rent roll for October 1997 shows that $67,497 in rent was due for apartments actually rented, resulting in an actual annualized rent roll of $809,964 ($67,497 x 12 months). If actual collections were only *570 $722,184, plaintiffs actual rent loss (excluding vacancy) would be 10.8% ($809,964 - $722,184 = $87,780 + $809,964 = 10.8%)— hardly the mark of a well-managed building, when total vacancy and rent loss determinations are of that general magnitude.
Some discussion of the building is necessary. It consists of 120 units. Two apartments are reserved for superintendents, and one is reserved for a porter. Two apartments are used as management offices. Thus, only 115 apartments are available for rent. Plaintiffs expert conceded that this was an abnormally high number of apartments withheld from the rental market.
Although plaintiff argues that the building is well-managed, and actual figures should be used, the failure to provide comparable rentals, the fact that there is rent control in East Orange, the fact that over time, a 22 + % vacancy and rent loss allowance is inordinately high (“a vacancy allowance must be predicated on an estimate of the long-term quality and durability of the rental income stream,” University Plaza v. Hackensack, 12 N.J.Tax 354, 369 (Tax 1992), citing Newark v. 1013 Corp., 1 N.J.Tax 107 (Tax 1980)), all lead me to conclude that plaintiffs expert’s method is flawed and that the more traditional approach should have been employed.
As for plaintiffs comparable sales analysis, plaintiffs expert testified that the average rent for apartments in East Orange was $500 per month. I have concluded that average rents in the subject were approximately $625, or 25% higher than the average for apartments in East Orange. This would indicate that the subject was, because it commanded higher rents, a better building than the average East Orange building. Additionally, plaintiffs comparable sales analysis of four properties included two properties sold after the October 1, 1997 assessing date and had no analysis of the sales price relative to the income stream from any of those four income producing properties. Plaintiffs expert’s only adjustments' to sales price were for size, parking, and “physical” differences.
*571 Apartment buildings are generally valued by the income approach to value. Helmsley v. Borough of Fort Lee, 78 N.J. 200, 214-15, 394 A.2d 65 (1978) appeal dismissed, 440 U.S. 978, 99 S.Ct., 1782, 60 L.Ed.2d 237 (1979), decision clarified 82 N.J. 128, 411 A.2d 203 (1980); Parsippany Hills Assocs. v. Parsippany Troy-Hills, 1 N.J.Tax 120, 121-22 (Tax 1980).
Having found that plaintiffs expert’s sales comparison approach and income approach to value analyses to be flawed, I must apply the standards of proof to plaintiffs case as enunciated by our Supreme Court and Appellate Division, and most recently analyzed by Judge Kuskin in MSGW Real Estate Fund, LLC v. Mountain Lakes Bor., 18 N.J.Tax 364 (Tax 1998) (written opinion dated March 22, 1999). In analyzing Ford Motor Co. v. Edison Tp., 127 N.J. 290, 604 A.2d 580 (1992), Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985), Cigolini v. Fairview Bor., 208 N.J. Super. 654, 506 A.2d 811 (App.Div.1986), Rodwood Gardens, Inc. v. City of Summit, 188 N.J.Super., 34, 455 A.2d 1136 (App.Div.1982), Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super., 65, 208 A.2d 153 (App.Div.1965), Rumson Bor. v. Beckham, 7 N.J.Tax 539 (Tax 1985), and other cases, Judge Kuskin concluded that, if the defendant does not move to dismiss at the end of the plaintiffs proofs under R. 4:37-2(b),
then at the conclusion of the trial, the court, before proceeding to decide the appeal based on weighing and analysis of the evidence, must first determine whether the presumption of validity [of the assessment] has been overcome. In making this determination, the court should view the evidence as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves) ...
[MSGW, supra. 18 N.J.Tax at 377.]
If the court determines that the plaintiff has failed to overcome the presumption,. .. |t]hen the court should enter judgment affirming the assessment.
[Id. at 378-79.]
If the court determines that the plaintiff has failed to overcome the presumption, and the defendant has.. presented evidence which on its face, could warrant relief under N.J.S.A. 54:51A-6(a), then the court should determine whether the defendant has overcome the presumption. If the court determines that the defendant has failed to do so, then the court should enter judgment affirming the assessment.
[Id. at 370.]
*572 Applying these rules to the evidence in this case, I find that plaintiff has failed to overcome the presumption of correctness of the assessment. His expert’s income analysis fails to demonstrate that actual rents received are economic rents. The expert’s analysis has a concealed implicit vacancy and rent loss allowance in excess of 22%, which is not a realistic long-term rate. His comparable sales analysis is also flawed, as demonstrated above. Plaintiff has failed to carry its burden of proof with regard to each and every element of the case that the original assessment was incorrect.
I find no factual support in the record for defendant’s expert’s opinion that vacancy and rent losses are 5% and 3%, respectively. That opinion is, in reality, a net opinion. N.J.R.E. 703, Herman Holding v. Montvale, 5 N.J.Tax 199, 207-8 (Tax 1983); Dworman v. Tinton Falls, 1 N.J.Tax 445, 458 (Tax 1980) aff’d, 180 N.J.Super. 366, 3 N.J.Tax 1, 434 A.2d 1134 (App.Div.), cert. denied, 88 N.J. 495, 443 A.2d 709 (1981). The actual figure from plaintiffs October 1997 rent roll is 13.3% ($10,394 -f- $77,-891). If I accepted the defendant’s appraiser’s conclusions, I would neither reduce nor increase the assessment. See footnote 2 below. Neither plaintiff nor defendant have overcome the presumption of correctness of the assessment. See MSGW, supra, at 379.
Having found that neither expert’s opinion, nor either party’s case, has established that the presumption of correctness which attaches to the assessment has been overcome, I will affirm the assessment.[2] The court will enter an appropriate judgment.

 "An income capitalization analysis considers the ioilowing components of future property benefits: potential gross income (PGI), effective gross income (EGI), net operating income (NOI) •. ” The Appraisal Institute.. . The Appraisal of Real Estate 467 (11th ed.1996). "EGI is the anticipated income from all operations of the real property, adjusted for vacancy and collection losses. Potential gross income is the total income attributable to a real property at 100% occupancy before operating expenses are deducted." Id. at 482. “Vacancy and collection loss is an allowance for reductions in potential income attributable to vacancies, frequent turnover, and nonpayment of rent." Id at 489. "Published surveys of similar properties under similar conditions may indicate an appropriate percentage allowance for vacancy and collection loss. An appraiser should survey the local market to support the vacancy estimate, but his or her conclusion may differ from the current level indicated by primary or secondary data because it reflects typical investor expectations over the specific holding period assumed or projected in the income capitalization approach. Id at 490 (emphasis supplied). Effective gross income is the anticipated income from all operations of the real property, i.e., potential gross income less the vacancy and collection loss allowance " Ibid.

 Our Supreme Court has indicated that, after having heard the value testimony of two experts, a trial court judge should attempt to find value. Ford Motor Co. v. Edison, supra, 127 N.J. at 313-16, 604 A.2d 580. Despite my legal conclusion that I should not find value in this case, I have, nevertheless, analyzed the facts before me. My conclusion of value, based on the record, would be:
*573 Item Conclusion Authority
Potential gross income $ 897,187 Defendant’s expert
Less vacancy & rent loss — 8% 71,775 Defendant's expert
$ 825,412
Plus parking 14,400 Defendant's expert
Effective gross income $ 839,812
Less expenses 404,300 Stipulated
Net income $ 435,512
Capitalized @ 15.87% Stipulated
yields a value of $2,744,247
The chapter 123 analysis follows: Assessment $ 775,000 = .2824
Value $2,744,247
The ratio of the assessment to true value falls within the common level range (.2996 to .2214). Accordingly, were I to find the proofs sufficient as a matter of law to overcome the presumption of correctness of the assessment, my analysis of the facts on the record would have led me to render a judgment affirming the assessment. See Passaic Street Realty v. Garfield, 13 N.J.Tax 482, 486, Line 5 of the six line chart (Tax 1993). However, the basis for my affirmance is not the foregoing arithmetic, but a finding that neither party has met its burden of proving value different from the assessment, as explained in MSGW, supra.