PER CURIAM.
West Colonial Enterprises, LLC (WCE), appeals from the involuntary dismissal by the Tax Court of its challenge to the 2000 and 2001 Real Property Assessments set by the City of East Orange (City). WCE also appeals from the denial of its motion for reconsideration. We affirm.
It is undisputed that WCE owns real property consisting of a 1.56-acre site, which contains a 132-unit residential building. One hundred and eighteen of the units are available for rent, one unit is used by the building superintendent, and one unit is used as an office. The remaining twelve units, the “basement apartments,” are apparently in violation of the City’s occupancy regulations. They are referred to in this opinion as “illegal” units.
*593 The property was assessed by the City for the years 2001 and 2002 as follows: land $161,000 and improvements $490,300, for a total assessment of $651,300 for each year. WCE appealed the 2000 and 2001 assessments to the Essex County Board of Taxation. The appeals were dismissed without prejudice. WCE appealed to the Tax Court.
A trial was held in the Tax Court. Anthony Rinaldi testified as an expert witness for WCE in the area of real estate valuation. Rinaldi used the income capitalization approach in order to reach an opinion as to the assessed value. He reviewed the rent roll for 2002 and annualized the monthly rentals without considering rent loss or vacancies. He then advanced the actual rental incomes for 2000 and 2001 by four percent and five percent respectively to account for rent control regulations. Based on the 2002 rent roll, Rinaldi opined that the current potential gross income (PGI) for the property ranged from $1,015,000 to $1,040,000. Next, Rinaldi took the actual rental incomes, which he considered to be the effective gross incomes (EGI) for the three years, and calculated a difference of approximately seventeen percent. Having used the 2002 rent roll to approximate a seven percent vacancy, Rinaldi concluded that the remaining ten percent was due to collection loss. Rinaldi admitted that these numbers had to be “extracted rather than built up” because he only had the 2002 rent rolls available to him.
Mark Hersh, managing partner of WCE, testified regarding the subject property, tenant turnover, collection loss and the twelve “illegal” basement apartments. He explained that he did not provide Rinaldi with the rent rolls for 2000 and 2001 because such a document is “a dynamic instrument” that is constantly changing. Therefore, he only provided the most current rent roll.
At the close of WCE’s proofs, the City moved to dismiss the ease pursuant to R. 4:37-2(b). The judge granted the motion, ruling that WCE failed to overcome the presumption of validity of the assessment.
WCE moved for reconsideration. Upon reconsideration, the judge reaffirmed his dismissal. He amplified and supplemented *594 his oral decision with a written opinion. The judge rejected Rinaldi’s methodology as being “flawed and demonstrat[ing] a misunderstanding of the basic premise of the income approach to value,” as discussed in Harclay House v. City of East Orange, 18 N.J. Tax 564 (Tax Ct.2000), aff'd o.b., 344 N.J.Super. 296, 781 A.2d 1085 (App.Div.2001), certif. denied, 171 N.J. 338, 793 A.2d 716 (2002).
On appeal, WCE contends that the judge erred by: (1) not using the correct standard of review when deciding the City’s motion for a directed verdict pursuant to R. 4:37 — 2(b); (2) relying on the Harclay House decision as a basis to dismiss plaintiffs ease; (3) determining that WCE had not established a debatable question as to the correctness of the assessment; and (4) dismissing the taxpayer’s case because the rationale employed by the court eliminated the decision of the municipality to either rest on the assessment or to present their case. We are not persuaded by these contentions.
At the outset we note that, although the judge commented on the evidence, his ruling is primarily based on legal principles. Specifically, the judge determined that WCE’s proofs were insufficient to rebut the presumption of validity to which municipal assessments are entitled.
The governing principles are well settled. In order for a taxpayer to prevail on a tax assessment challenge, the presumption of validity must be overcome. Pantasote Co. v. City of Passaic, 100 N.J. 408, 413, 495 A.2d 1308 (1985); MSGW Real Estate Fund v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373-76 (Tax Ct.1998). The taxpayer “must present ‘sufficient competent evidence ... to prove a true valuation different from the assessment.’ ” Brae Assocs. v. Park Ridge Borough, 19 N.J. Tax 306, 312 (App.Div.), certif. denied, 170 N.J. 87 (2001) (quoting Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952)). The evidence must be “ ‘definite, positive and certain in quality and quantity.’ ” Ibid. (quoting Aetna Life Ins. Co., supra, 10 N.J. at 105, 89 A.2d 385). Furthermore, it must raise “a *595 debatable question as to the validity of the assessment.” MSGW Real Estate Fund, supra, 18 N.J. Tax at 376.
If the taxpayer fails to overcome this burden, the Tax Court has no duty to allow the matter to proceed. Phillips v. Hamilton Township, 15 N.J. Tax 222, 227 (App.Div.1995). Moreover, the Tax Court is under no obligation to independently determine the true value of the subject property, where the presumption has not been overcome. Pantasote, supra, 100 N.J. at 417, 495 A.2d 1308. In deciding a motion at the close of the taxpayer’s case, the Tax Court must accept as true the proofs presented and accord the taxpayer “all legitimate inferences which can be deduced” therefrom. MSGW Real Estate Fund, supra, 18 N.J. Tax at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 666 A.2d 146 (1995)).
Applying those principles here, we conclude that the judge’s decision to dismiss the case must be affirmed. The judge property disallowed Rinaldi’s opinion, which was based on a methodology that had been expressly rejected in Harclay House. Thus, the judge did not weigh Rinaldi’s expert opinion. Rather, the judge disregarded the opinion. The judge correctly determined that it did not qualify as an expert opinion because it did not comport with a sound analysis of value. Without an expert’s opinion, WCE could not meet its burden.
Rinaldi’s opinion was flawed for three reasons. First, he used the actual rents as of July 2002 to calculate the EGI for the years 2001 and 2002. The correct dates would have been October 1, 2000 and October 1, 2001. Second, Rinaldi’s computations of the PGI and the EGI were based on actual, not market rate, rent. Third, Rinaldi calculated a vacancy and collection loss allowance by use of an unorthodox method.[1] These errors vitiated the PGI and EGI calculation.
*596 EGI can be the actual income from all operations of the subject property, adjusted for vacancy, provided that the actual rent is deemed to be “economic rent, also known as the ‘market rent’ or ‘fair rental value.’ ” Parkway Vill. Apartments Co. v. Cranford Township, 108 N.J. 266, 270, 528 A.2d 922 (1987). However, economic rent may differ from actual rent. Dworman v. Borough of Tinton Falls, 1 N.J. Tax 445, 458 (Tax Ct.1980), aff'd, 180 N.J.Super. 366, 3 N.J.Tax 1, 434 A.2d 1134 (App.Div.), certif. denied, 88 N.J. 495, 443 A.2d 709 (1981). Thus, it is necessary to check actual income to determine whether it reflects economic income. Harclay House, supra, 18 N.J. Tax at 568. This requires a comparison of rents charged for comparable facilities in a competitive market. See Harclay House, supra, 18 N.J. Tax at 568.
We are mindful that in Parkway Vill. Apartments Co., supra, 108 N.J. at 267, 528 A.2d 922, the Court reaffirmed the Parkview rule set out in Parkview Vill. Assocs. v. Borough of Colling swood, 62 N.J. 21, 34, 297 A.2d 842 (1972), which held that unless there was evidence to the contrary, the actual rent roll in a large well-managed apartment complex with short-term leases is prima facie proof of economic rent. However, in Harclay House, the Tax Court concluded that the use of actual collected rents to arrive at EGI without the confirmation that those values were market rents established “the leased fee of the subject property as opposed to the fee simple interest.” 18 N.J.Tax, supra, at 569. In other words, the real estate tax assessment is based on the fair market value of the property, as revealed by the income approach to valuation. This may be different from the actual rent roll, which may reflect rents that are not competitive.
Here, Rinaldi departed from the Harclay House methodology. In fact, he took a similar approach as the one rejected in Harclay *597 House. Thus, what is missing in Rinaldi’s approach is what was missing in Harclay House, “a sufficient sampling of comparable area rents to provide a reliable criterion.” Ibid, (italics omitted). For that reason, his opinion is to be disregarded.
WCE is mistaken in its argument that the judge erred by making a finding regarding the sufficiency of the evidence. In fact, the judge was required to decide whether WCE’s proofs overcame the presumption of validity. See N.Y. Harbor Assocs. v. Jersey City, 17 N.J. Tax 602, 606 (App.Div.1998); MSGW Real Estate Fund, supra, 18 N.J. Tax at 376; See also Pitts v. Newark Bd. of Educ., 337 N.J.Super. 331, 340, 766 A.2d 1206 (App.Div. 2001) (noting that a motion to dismiss should be granted when an essential element of the plaintiffs case is lacking). A deficiency in methodology “could not begin to overcome the presumptive validity of [the City’s] assessed value of the property.” NY Harbor Assocs., supra, 17 N.J. Tax at 606. Thus, an involuntary dismissal was warranted. Ibid.; Harclay House, supra, 18 N.J.Tax at 571-72; MSGW Real Estate Fund, supra, 18 N.J. Tax at 376.
Affirmed.

 According to the tax judge, Rinaldi:
based a range for PGI, in part, on rents that would be relevant to a 2003 appeal, but not to the 2001 and 2002 tax years in question. He then determined EGI simply by using the actual rental income figures from *596 [WCE’s] income tax returns for the relevant years. Then, he basically took the difference to calculate a vacancy and collection loss allowance, although there is some independent support for 17.7% allowance for 2001. Working backwards, he added the vacancy loss allowance and the EGI for each year to establish PGI.