**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

_____

EAST GATE BUSINESS CENTER, LLC,   )       TAX COURT OF NEW JERSEY
                                     )       DOCKET NO. 014519-2010
                                     )       DOCKET NO. 009721-2011
              Plaintiff,      )       DOCKET NO. 009665-2012
                                     )
         v.                  )
                                     )       MEMORANDUM OPINION
TOWNSHIP OF MOUNT LAUREL,   )
                                     )
             Defendant.     )
_____   )

Decided: January 29, 2018

Elizabeth J. Hampton, Esq., and Alexander M. Wixted, Esq., for plaintiff (Fox Rothschild, LLP, attorneys)

Tyler T. Prime, Esq., for defendant (Prime Law, attorneys)

DeALMEIDA, J.T.C.

This letter constitutes the court's opinion after trial in the above-referenced matters challenging the assessments on real property for tax years 2010, 2011 and 2012. For the reasons stated more fully below, the assessment on the property for each of the tax years is reduced.

### I. Procedural History and Findings of Fact

The following findings of fact and conclusions of law are based on the evidence and testimony admitted at trial.

These appeals concern real property in Mount Laurel Township, Burlington County. The property, designated in the records of the township as Block 1201.06, Lot 1, is commonly known as 125-139 Gaither Drive.

The subject property is 9.19 acres on which sits four office buildings and four flex/warehouse buildings constructed in 1977. The gross building area is 115,770 square feet, with 114,989 square feet of rentable area. The structures include seven one-story buildings, and one two-story building. All of the buildings are in fair to average condition. The flex/warehouse buildings have limited finished office space. The warehouse space has lower ceilings than would be required for largescale warehouse operations. That space is intended, instead, to store a minimal amount of materials for the business operation of the tenant in the adjoining office space. The backs of the flex/warehouse buildings have loading docks with roll-up doors for small vehicles. The property is located in an industrial zoning district.

The subject property requires a significant management presence, given its age and the large number of tenants. Many of the units are not individually metered for utilities. In addition, the structures do not have a fire suppression system, although the buildings are wired with smoke detectors. The second floor of the two-story office building is not compliant with the Americans with Disabilities Act and does not have handicapped access.

For tax years 2010, 2011 and 2012, the subject property was assessed as follows:

| | |
|---|---|
| Land | $1,102,800 |
| Improvement | $3,697,200 |
| Total | $4,800,000 |

The Chapter 123 average ratio for the municipality for tax year 2010 is 49.06%. When the average ratio is applied to the assessment, the implied equalized value of the subject property for that tax year is $9,783,938 ($4,800,000 ÷ .4906 = $9,783,938).

The Chapter 123 average ratio for the municipality for tax year 2011 is 52.06%. When the average ratio is applied to the assessment, the implied equalized value of the subject property for that tax year is $9,220,131 ($4,800,000 ÷ .5206 = $9,220,131).

2

The Chapter 123 average ratio for the municipality for tax year 2012 is 53.10%. When the average ratio is applied to the assessment, the implied equalized value of the subject property for that tax year is $9,039,548 ($4,800,000 ÷ .5310 = $9,039,548).

Plaintiff challenged the tax year 2010 assessment by filing a Petition of Appeal with the Burlington County Board of Taxation. The county board issued a Judgment affirming the assessment. Plaintiff thereafter filed a Complaint in this court challenging the county board Judgment. With respect to tax years 2011 and 2012, plaintiff filed Complaints directly with this court challenging the assessments on the subject property.

During the two-day trial, each party presented an expert real estate appraiser to offer opinions of the true market value of the subject property on the relevant valuation dates. The opinions of the experts are summarized as follows:

| Tax Year | 2010 | 2011 | 2012 |
|---|---|---|---|
| Valuation Date | 10/1/2009 | 10/1/2010 | 10/1/2011 |
| Plaintiff's Expert | $5,900,000 | $6,000,000 | $6,100,000 |
| Defendant's Expert | $9,200,000 | $9,200,000 | $9,200,000 |

Both experts used the income capitalization approach to value the subject property. Plaintiff's expert also used the sales comparison approach, mostly to corroborate the opinions of value he reached under the income capitalization approach. In many respects, the experts varied little in their value analysis. At the conclusion of trial, the court identified three issues for the parties to address in post-trial briefing: (1) whether tenant improvements costs should be included in the income capitalization approach to valuing the subject property; (2) the allocation of office and flex/warehouse space in the four buildings the parties agree are flex/warehouse buildings; and (3) whether the four buildings used as office space on the relevant valuation date should be considered flex/warehouse buildings, instead of office buildings when determining value.

II.  Conclusions of Law

The court's analysis begins with the well-established principle that "[o]riginal assessments and judgments of county boards of taxation . . . are entitled to a presumption of validity."  MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998).  As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as:

> The presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous.  The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled.  The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it.  That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."
>
> [Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)(citations omitted)).]

The presumption of correctness arises from the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law."  Pantasote, supra, 100 N.J. at 413 (citing Powder Mill I Assocs. v. Township of Hamilton, 3 N.J. Tax 439 (Tax 1981)); see also Byram Twp. v. Western World, Inc., 111 N.J. 222 (1988).  The presumption remains "in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity."  Transcontinental Gas Pipe Line Corp. v. Township of Bernards, 111 N.J. 507, 517 (1988).

"The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced."  Little Egg Harbor Twp. v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998)(citation omitted); Atlantic City v. Ace Gaming, LLC, 23 N.J. Tax 70, 98 (Tax 2006).  "In the absence of a R. 4:37-2(b) motion . . . the presumption of validity remains in the case through

4

the close of all proofs." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence "as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion." Ibid. The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995)). In order to overcome the presumption, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters., LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003)(quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div.), certif. denied, 165 N.J. 488 (2000)), aff'd, 21 N.J. Tax 590 (App. Div. 2004).

Only after the presumption is overcome with sufficient evidence at the close of trial must the court "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982). If the court determines that sufficient evidence to overcome the presumption has not been produced, the assessment shall be affirmed and the court need not proceed to making a value determination. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312 (1992); Global Terminal & Container Serv. v. City of Jersey City, 15 N.J. Tax 698, 703-04 (App. Div. 1996).

The parties agree that the highest and best use of the subject property is its continued use to generate rental income from office space and flex/warehouse space. Plaintiff's expert, using the income-capitalization approach most commonly used to value income-generating property, such

as the subject, opined that the subject had a true market value several million dollars below the implied equalized assessed value in place for each of the tax years at issue.

The court concludes that the opinions of value offered by plaintiff's expert, which were based on an accepted methodology for determining value and on evidence of the type often used for such determinations, if accepted as true, raise doubt in the court's mind with respect to whether the assessments on the subject property exceeded true market for the tax years in question. The presumption of correctness attached to the county board Judgment for tax year 2010, and the assessments for tax years 2011 and 2012 have been overcome.

The court's inquiry, however, does not end here. Once the presumption is overcome, the "court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co., supra, 127 N.J. at 312 (quotations omitted). "[A]lthough there may have been enough evidence to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer throughout the entire case . . . to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote, supra, 100 N.J. at 413).

A.    Approach to Valuation

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div.)(citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 2006)), certif. denied, 168 N.J. 291 (2001). "There is no single determinative approach to the valuation of real property." 125 Monitor Street, LLC v. City of Jersey City, 21 N.J. Tax 232, 237 (Tax 2004)(citing Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 72 (App. Div.

6

1965); ITT Continental Baking Co. v. Township of East Brunswick, 1 N.J. Tax 244 (Tax 1980)), aff'd, 23 N.J. Tax 9 (App. Div. 2005). "The choice of the predominate approach will depend upon the facts of each case and the reaction of the experts to those facts." Id. at 238 (citing City of New Brunswick v. Division of Tax Appeals, 39 N.J. 537 (1963); Pennwalt Corp. v. Township of Holmdel, 4 N.J. Tax 51, 61 (Tax 1982)).

Both experts relied primarily on the income capitalization approach to valuing the subject property. The income capitalization approach is the preferred method of estimating the value of income producing property. Parkway Village Apartments Co. v. Township of Cranford, 108 N.J. 266, 270 (1987); Hull Junction Holding Corp. v. Borough of Princeton, 16 N.J. Tax 68, 79 (Tax 1996). "In the income capitalization approach, an appraiser analyzes a property's capacity to generate future benefits and capitalizes the income into an indication of present value." Appraisal Institute, The Appraisal of Real Estate 445 (13th ed. 2008). The court finds that the income capitalization approach is the best method for determining the value of the subject property, an income-producing complex of office buildings and flex/warehouse buildings.

B.      Calculation of Value Using Income Approach

Determining the value of real property pursuant to the income approach can be summarized as follows:

$$
\begin{array}{r}
\text{Market Rent} \\
\text{x} \quad \underline{\text{Square Footage}} \\
\text{Potential Gross Income} \\
\\
\text{-} \quad \underline{\text{Vacancy and Collection Losses}} \\
\text{Effective Gross Income} \\
\\
\text{-} \quad \underline{\text{Operating Expenses}} \\
\text{Net Operating Income} \\
\\
\div \quad \underline{\text{Capitalization Rate}} \\
\text{Value of Property}
\end{array}
$$

See Spiegel v. Town of Harrison, 19 N.J. Tax 291, 295 (App. Div. 2001), aff'g, 18 N.J. Tax 416 (Tax 1999); Appraisal Institute, The Appraisal of Real Estate 466 (13th ed 2008).

       1.       <u>Market Rent</u>

"Central to an income analysis is the determination of the economic rent, also known as the 'market rent' or 'fair rental value.'" Parkway Village Apartments, supra, 108 N.J. at 270. This differs from the actual rental income realized on the property, which may be below market rates. Parkview Village Assocs. v. Borough of Collingswood, 62 N.J. 21, 29-30 (1972). However, actual income is a significant probative factor in the inquiry as to economic income. Id. at 30. "Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area." Ibid.

The experts opined similar market rents for the office space at the subject property. The closeness of the expert's opinions is most evident for tax year 2012. For that year, both experts opined a triple net rent for the office space, with the tenant paying all but a few expenses. See N.J. Indus. Props., Inc. v. Y.C. & V.L., Inc., 100 N.J. 32, 434 (1985). Plaintiff's expert opined $10.00 per square foot and defendant's expert opined $9.00 per square foot.

For tax years 2010 and 2011, plaintiff's expert opined $11.50 per square foot and $10.50 per square foot on a triple net basis. Defendant's expert opined $15.25 and $14.75 per square foot on a gross basis, with the tenant paying no expenses except tenant electric charges. See American Cyanamid Co. v. Township of Wayne, 17 N.J. Tax 542, 572 (Tax 1998), aff'd, 19 N.J. Tax 46 (App. Div. 2000). He testified, however, that a conversion from gross rent to triple net rent could be made with a negative $5.00 per square foot adjustment. This would result in market triple net rent of $10.25 per square foot for tax year 2010, and $9.75 per square foot for tax year 2011.

The experts' market rents for the office space at the subject properties, therefore, are correctly summarized as follows:

| Tax Year | 2010 | 2011 | 2012 |
|---|---|---|---|
| Plaintiff's Expert | $11.50 psf | $10.50 psf | $10.00 psf |
| Defendant's Expert | $10.50 psf | $ 9.75 psf | $ 9.00 psf |

The opinions offered by both experts were based on comparable leases that the court finds to be credible evidence and on adjustments supported by market data. The court adopts the office market rent offered by plaintiff's expert, which is higher than that offered by the municipality's expert, as credible.

The same is true with respect to the experts' opinions of market rent for the flex/warehouse space. Plaintiff's expert opined a triple net market rent for all three tax years. Defendant's expert opined a gross rent for tax year 2010 and 2011 and a triple net rent for tax year 2012. The court concludes that the economic rents offered by plaintiff's expert for the flex/warehouse space, which did not differ greatly from those offered by defendant's expert (with an adjustment to convert from gross rent to triple net rent), are credible. The evidence introduced at trial supports the expert's opinion.

2.      Building Size

The parties are essentially in agreement with respect to the rentable space at the subject property. They differ, however, with respect to how the office space and flex/warehouse space in the four buildings used for those purposes on the valuation dates is properly allocated. The court accepts the allocations offered by plaintiff's expert. This expert inspected the property, and offered convincing testimony with respect to the finishes at the buildings, which delineate office space from flex/warehouse space. In addition, the expert's allocations more closely match photographs and documents admitted into evidence.

9

Defendant's expert suggested at the close of his testimony that the four buildings used only as office space as of the valuation dates could be considered as flex/warehouse space for valuation purposes. The expert's testimony contradicts his report, which valued those buildings as office space. In addition, the trial record contains no evidence suggesting that a conversion of those buildings to flex/warehouse space, either in part or entirely, would be economically feasible, from a cost perspective, a physical perspective, or a market demand perspective. The court finds more credible the approach taken by both experts in their reports: to value the subject in accord with its use on the valuation dates.

3. Vacancy and Collection Rate

A determination of value under the income-capitalization approach must include "a vacancy and loss allowance over the economic life of the property, using, in some measure, the actual history, but placing more emphasis on the trends in the most recent years." First Republic Corp. of Am. v. Borough of East Newark, 16 N.J. Tax 568, 580 (App. Div. 1997), aff'd, 17 N.J. Tax 531 (App. Div. 1998). "The important principle implicated in the estimate of a vacancy and loss allowance is that the estimate is simply the appraiser's informed judgment of the long-term and durability of the income stream." Ibid. As Judge Crabtree explained:

> [The] determination involves more than uncritical acceptance of the vacancy rates prevailing in the subject on the valuation dates or, for that matter, the office building vacancy rates prevailing in the subject's market area. Rather, a vacancy allowance must be predicated on an estimate of the long-term quality and durability of the rental income stream.
>
> [University Plaza Realty Corp. v. City of Hackensack, 12 N.J. Tax 354, 369 (Tax 1992), aff'd, 264 N.J. Super. 353 (App. Div.), certif. denied, 134 N.J. 481 (1993)(citation omitted).]

A vacancy and collection rate should not be "unduly influenced by the experience of the subject property during a period of financial turmoil," but also cannot "totally ignore[] the history

10

of the subject property . . . ." <u>Pine Plaza Assocs., LLC v. Township of Hanover</u>, 16 <u>N.J. Tax</u> 194, 205 (Tax 1996).

At trial, the parties did not vigorously contest the vacancy and collection rate component of the experts' analyses. The experts offered similar vacancy and collection rates for tax years 2011 and 2012. Plaintiff's expert offered a higher vacancy and collection rate for tax year 2010, based on the actual rate at the subject and his opinion of the poor state of the office rental market on October 1, 2009, during a well-recognized economic downturn. The court accepts the market vacancy and collection rates offered by plaintiff's expert. The expert formulated his opinion based on market data, his view of the decline of the office market in Burlington County during the tax years in question, and the actual experience at the subject property.

4. <u>Operating Expenses</u>

Having found the triple net market rent opined by defendant's expert to be credible market rent for the subject property, the court must limit market expenses to the few costs incurred by a property owner receiving triple net rent. Plaintiff's expert opined stabilized market expenses that includes management fees, leasing commissions, and tenant improvements. He based his figures on actual expenses at the subject, which he checked against market data, and then stabilized.

Defendant's expert did not include tenant improvement costs when opining on market expenses for the subject. Tenant improvements are costs incurred by a landlord to fit up space for tenants, either when a new tenant is to take possession of space, or upon renewal of a lease. Plaintiff's expert took a careful approach to determining market tenant improvement costs, accounting for new tenants, which he opined would be more costly, renewal tenants, and historical expenses at the subject. The court finds that the opinion of expenses offered by plaintiff's expert to be credible and supported by market data and reliable evidence admitted at trial.

11

5. Capitalization Rate

The overall capitalization rate is an "income rate for a total real property interest that reflects the relationship between a single year's net operating income expectancy and the total property price or value . . . ." Appraisal Institute, The Appraisal of Real Estate at 462. The overall capitalization rate is "used to convert net operating income into an indication of overall property value." Ibid.

Both experts used the Band of Investment technique to calculate an overall capitalization rate. "This technique is a form of 'direct capitalization' which is used 'to convert a single year's income estimate into a value indication.' The technique includes both a mortgage and an equity component." Hull Junction Holding, supra, 16 N.J. Tax. at 80-81 (quoting Appraisal Institute, Appraisal of Real Estate 467 (10th ed 1992)).

> Because most properties are purchased with debt and equity capital, the overall capitalization rate must satisfy the market return requirements of both investment positions. Lenders must anticipate receiving a competitive interest rate commensurate with the perceived risk of the investment or they will not make funds available. Lenders generally require that the loan principal be repaid through periodic amortization payments. Similarly, equity investors must anticipate receiving a competitive equity cash return commensurate with the perceived risk, or they will invest their funds elsewhere.
>
> [Appraisal Institute, Appraisal of Real Estate 505 (13th ed 2008).]

In "using the Band of Investment technique, it is incumbent upon the appraiser to support the various components of the capitalization rate analysis by furnishing 'reliable market data . . . to the court as the basis for the expert's opinion so that the court may evaluate the opinion.'" Hull Junction Holding, supra, 16 N.J. Tax at 82 (quoting Glen Wall Assocs. v. Township of Wall, 99 N.J. 265, 279-80 (1985)). "For these purposes, the Tax Court has accepted, and the Supreme Court has sanctioned, the use of data collected and published by the American Council of Life

Insurance." Id. at 82-83. "Relevant data is also collected and published by . . . Korpacz Real Estate Investor Survey." Id. at 83. "By analyzing this data in toto, the court can make a reasoned determination as to the accuracy and reliability of the mortgage interest rates, mortgage constants, loan-to-value ratios, and equity dividend rates used by the appraisers." Ibid.

The capitalization rates offered by the experts did not vary greatly and were not contested at length during the trial. The court finds the capitalization rates opined by plaintiff's expert to be credible, with one necessary adjustment. The expert "loaded" his capitalization rate to account for the local property taxes at the subject property. This approach is accepted where the property owner collects rent on a gross basis and bears the cost of local property taxes. However, where, as the court is presuming here, rent is collected on a triple net basis, with the tenants bearing the cost of local property taxes, loading the capitalization rate to account for those taxes would skew the calculation of the property's true market value.

Plaintiff's expert opined a capitalization rate of 9% for tax year 2010, and adjusted the rate 9.38% to account for local property taxes. For tax year 2011, he opined a capitalization rate of 8.75%, and adjusted the rate to 9.04% to account for local property taxes. For tax year 2012, he opined a capitalization rate of 8.25%, and adjusted the rate to 8.55% to account for local property taxes. The court will use the expert's unadjusted capitalization rates to calculate the true market value of the subject property.

6.    Calculation of Value

Because the court has, in effect, accepted the net operating income opined by plaintiff's expert for each tax year, the court need only apply the capitalization rates it adopted as credible to that net operating income to determine the true market value of the subject property. That calculation follows:

| Tax Year | 2010 | 2011 | 2012 |
|---|---|---|---|
| Net Operating Income | $ 543,000 | $ 538,000 | $ 515,000 |
| ÷ Capitalization Rate | .0900 | .0875 | .0825 |
| Value of Property | $6,033,333 | $6,148,571 | $6,242,424 |

The court will round this figures, and makes the following findings of value:

For tax year 2010, the true market value of the subject property as of October 1, 2009 was $6,000,000.

For tax year 2011, the true market value of the subject property as of October 1, 2010 was $6,150,000.

For tax year 2012, the true market value of the subject property as of October 1, 2011 was $6,240,000.[1]

C.      Applying Chapter 123

Pursuant to N.J.S.A. 54:51A-6a, commonly known as Chapter 123, in a non-revaluation year an assessment must be reduced when the ratio of the assessed value of the property to its true value exceeds the upper limit of the common level range. The common level range is defined by N.J.S.A. 54:1-35a(b) as "that range which is plus or minus 15% of the average ratio" for the municipality in which the subject property is located.

The formula for determining the subject property's ratio is:

Assessment ÷ True Value = Ratio

---

[1]   Plaintiff's expert also used the comparable sales approach in reaching his opinions of values. The sales comparison approach is "[t]he process of deriving a value indication for the subject property by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices (or unit prices, as appropriate) of the comparable properties based on relevant, market-driven elements of comparison." The Appraisal of Real Estate, supra, at 297. This approach usually provides the primary indication of market value of "properties that are not purchased primarily for their income-producing characteristics." Id. at 300. The court declines to use the sales comparison approach here, given the income-producing nature of the subject property and the sufficiency of the evidence supporting conclusions of value under the income capitalization approach.

1.    Tax Year 2010

For tax year 2010, the formula produces a ratio of .8000.

$$\$4,800,000 \div \$6,000,000 = .8000$$

The Chapter 123 common level ratio for Mount Laurel Township for tax year 2010 is .4906, with an upper limit of .5642 and a lower limit of .4170. The ratio for the subject property for this tax year is .8000, which exceeds the upper limit of the range for this tax year. Consequently, the court will determine the assessment for the subject property for tax year 2010 by multiplying the true value by the Chapter 123 ratio:

$$\$6,000,000 \times .4906 = \$2,943,600$$

The court will round this figure to $2,944,000.

A Judgment establishing the assessment for the subject property for tax year 2010 will be entered as follows:

| Land | $1,044,000 |
|---|---|
| Improvement | $1,900,000 |
| Total | $2,944,000 |

2.    Tax Year 2011

For tax year 2011, the formula produces a ratio of .7804.

$$\$4,800,000 \div \$6,150,000 = .7804$$

The Chapter 123 common level ratio for Mount Laurel Township for tax year 2011 is .5206, with an upper limit of .5987 and a lower limit of .4425. The ratio for the subject property for this tax year is .7804, which exceeds the upper limit of the range for this tax year. Consequently, the court will determine the assessment for the subject property for tax year 2011 by multiplying the true value by the Chapter 123 ratio:

$$\$6,150,000 \times .5206 = \$3,201,690$$

15

The court will round this figure to $3,200,000.

A Judgment establishing the assessment for the subject property for tax year 2011 will be entered as follows:

| | |
|---|---|
| Land | $1,044,000 |
| Improvement | $2,156,000 |
| Total | $3,200,000 |

3.      Tax Year 2012

For tax year 2012, the formula produces a ratio of .7692.

$$\$4,800,000 \div \$6,240,000 = .7692$$

The Chapter 123 common level ratio for Mount Laurel Township for tax year 2012 is .5310, with an upper limit of .6107 and a lower limit of .4513. The ratio for the subject property for this tax year is .7692, which exceeds the upper limit of the range for this tax year. Consequently, the court will determine the assessment for the subject property for tax year 2012 by multiplying the true value by the Chapter 123 ratio:

$$\$6,240,000 \times .5310 = \$3,313,440$$

The court will round this figure to $3,310,000.

A Judgment establishing the assessment for the subject property for tax year 2012 will be entered as follows:

| | |
|---|---|
| Land | $1,044,000 |
| Improvement | $2,266,000 |
| Total | $3,310,000 |