NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY

**Joseph M. Andresini, P.J.T.C.**
 **Presiding Judge**



125 State Street, Suite 100
Hackensack, New Jersey 07601
(609) 815-2922 ex. 54570
Fax: (201) 996-8052

November 18, 2019

James P. Gianakis, Esq.
Gianakis Law LLC
51 JFK Parkway, 1st Floor
Short Hills, New Jersey 07078

Levi J. Kool, Esq.
Huntington Bailey, L.L.P.
373 Kinderkamack Rd.
Westwood, New Jersey 07675

> Re: Fremartin v. Borough of Westwood
> Docket No. 013451-2016

Dear Mr. Kool and Mr. Gianakis,

This letter constitutes the court's opinion following trial of the local property tax appeal filed by plaintiff, Fremartin Realty Corporation (plaintiff). Plaintiff challenged the 2016 tax year assessment on improved property located in Westwood Borough, Bergen County, New Jersey.

For the reasons stated more fully below, the court affirms the 2016 tax year assessment.

I. <u>Procedural History and Findings of Fact</u>

The following findings of fact and conclusions of law are based on the evidence and testimony admitted at trial.

Fremartin Realty Corporation is the owner of real property located in Westwood Borough, New Jersey. The subject property is located at 499 Broadway, Westwood, New Jersey 07675, Block 807, Lot 8. The property is described as an improved one story commercial retail building structure containing roughly 4072 square feet. The subject property has been occupied as a bank branch since July of 2004. The record shows that after some litigation, the lot had been divided into two separate lots, retaining some common parking spots. In total, the subject property has exclusive access to approximately 10 parking spaces, with an additional 14 spaces on the property subject to parking meters enforced by the municipality. The subject property has two points of ingress and one point of egress.

For the 2016 tax year, the subject property was assessed by the municipality as follows:

Land: $823,500.00
Improvements: $767,500.00
Total: $1,591,000.00

The Bergen County Board of Taxation affirmed this assessment with its judgment for the 2016 tax year, of which plaintiff appeals. Plaintiff's appraiser valued the subject property using the direct sales comparison approach as well as the income capitalization approach. The cost approach was not utilized. The direct sales comparison approach analysis by taxpayer's appraiser resulted in a valuation of $1,120,000. The income approach resulted in a valuation of $1,110,000. The plaintiff's appraiser's final valuation was $1,115,000.

Although the plaintiff's appraiser included five comparable sales and five comparable leases to support the direct sales comparison and income approaches to their valuation determination, the testimony of the taxpayer's appraiser showed that at least four of these comparable sales were not properly verified. Similar verification issues were present in the

2

comparable leases as well. As such, the court is not able to afford any weight to the majority of comparable sales and leases used to support the taxpayer's valuation of the subject property.

## II. Conclusions of Law

### A. Presumption of Validity

The court's value analysis begins with the well-established principle that "[o]riginal assessments . . . are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). The presumption of validity arises from the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (citing Powder Mill, I Assocs. v. Township of Hamilton, 3 N.J. Tax 439 (Tax 1981)); see also Byram Township v. Western World, Inc., 111 N.J. 222, 235 (1988) and City of Atlantic City v. Ace Gaming, LLC, 23 N.J. Tax 70, 98 (Tax 2006).

The burden is on the appealing party to overcome the presumption and prove that the assessment is erroneous. "The presumption in favor of the taxing authority can be rebutted only by cogent evidence. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be 'definite, positive and certain in quality and quantity to overcome the presumption.'" Pantasote Co., supra, 100 N.J. at 413 (quoting Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952)).

The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995)). If the court determines that sufficient evidence to overcome the presumption has not been produced, the assessment shall be affirmed and the court need not proceed to making an

3

independent determination of value. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312 (1992); Global Terminal & Container Serv. v. City of Jersey City, 15 N.J. Tax 698, 703-704 (App. Div. 1996). In order to overcome the presumption, the evidence must be "sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment." West Colonial Enters., LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003), aff'd 21 N.J. Tax 590 (App. Div. 2004). Only after the presumption is overcome with sufficient evidence at the close of trial must the court "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982). At the conclusion of plaintiff's case, the defendant moved to strike the taxpayer's valuation of the subject property based on a net opinion by plaintiff's expert and moved to dismiss plaintiff's case for failure to overcome the presumption of validity. For the reasons stated on the record defendant's motions were denied.

A finding that plaintiff has overcome the presumption of correctness does not equate to a finding that the assessment is erroneous. To the contrary, plaintiff's overcoming the presumption merely puts the municipality's assessment into question and permits the court to proceed to address the weight of the evidence in order to determine if the plaintiff has met their burden. Once the presumption is overcome, the "court must then turn to a consideration of evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co., supra, 127 N.J. at 312 (quotations omitted). "[A]lthough there may have been enough evidence to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer throughout the entire case . . . to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote, supra, 100 N.J. at 413).

4

B. <u>Highest and Best Use</u>

Where a taxpayer overcomes the presumption of validity, the court's analysis of the evidence then begins with an examination of the experts' highest and best use conclusions. Highest and best use is defined as, "[t]he reasonably probable use of property that results in the highest value." Appraisal Institute, <u>The Appraisal of Real Estate</u> 332 (14th ed. 2013). The analysis "requires sequential consideration of the following four criteria, determining whether the use of the Subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive." <u>Clemente v. Township of South Hackensack</u>, 27 <u>N.J. Tax</u> 255, 268 (2013), <u>aff'd</u>, <u>N.J. Super.</u> (App. Div. 2015) (<u>citing</u> <u>Ford Motor Co. v. Township of Edison</u>, 10 <u>N.J. Tax</u> 153, 161 (Tax 1988)). "The highest and best use of a specific parcel of land is not determined through subjective analysis by the property owner, the developer, or the appraiser; rather highest and best use is shaped by the competitive forces within the market where the property is located." <u>Entenmann's Inc. v. Borough of Totowa</u>, 18 <u>N.J. Tax</u> 540, 545 (Tax 2000), (quoting Appraisal Institute, <u>The Appraisal of Real Estate</u> 298 (11th ed. 1996)). Moreover, property is to be assessed in the condition in which it is held and the burden to bring forth the necessary proofs falls to the party alleging a different highest and best use. <u>Highview Estates v. Borough of Englewood Cliffs</u>, 6 <u>N.J. Tax</u> 194, 200 (Tax 1983). Highest and best use analysis is the first step in the appraisal process.

The taxpayer and his appraiser assert that the highest and best use of the subject property was as a general commercial retail property. It is through this lens that the taxpayer's appraiser came to his valuation determination. Though the property is currently being occupied by a bank, the taxpayer argues that the makeup of the property makes it more comparable to other commercial retail spaces in the area as opposed to properties specifically designated as bank properties. This

can be supported by the building's layout, parking situation, and its lack of a drive through ATM – something typically seen in modern bank locations. The municipality did not introduce evidence or testimony on the record promoting an alternative highest and best use or properly challenging the highest and best use asserted by plaintiff and his appraiser.

Accordingly, the court finds that the subject property's highest and best use is that of a commercial retail property. The court agrees with the plaintiff's contention that the property is more akin to a commercial retail space in many respects. All evidence and testimony on the record supports the taxpayer's position that the highest and best use for the subject is as a commercial retail location. Given these factors, regardless of the property's current use as a bank, the record supports the taxpayer's position that the use that will permit the highest returns for the property is commercial retail. See Inmar Associates, Inc. v. Township of Edison, 2 N.J. Tax 59, 64 (Tax 1980). ("Any parcel of land should be examined for all possible uses and that use which will yield the highest return should be selected.")

C. Valuation of the Subject Property

The court next turns to the valuation of the subject property. "There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001) (citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 1996), certif. denied, 168 N.J. 291 (2001)). There is no single determinative approach to the valuation of real property." 125 Monitor Street, LLC v. City of Jersey City, 21 N.J. Tax 232, 237 (Tax 2004)(citing Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 72 (App Div. 1965); ITT Continental Baking Co. v. Twp. of East Brunswick, 1 N.J. Tax 244 (Tax 1980)), aff'd, 23 N.J. Tax 9 (App. Div. 2005).

1. *Plaintiffs' Valuation Evidence*

The Plaintiff utilized the comparable sales approach as well as the income capitalization approach to determine the fair market value of the subject property. The sales comparison approach is "[t]he process of delivering a value indication for the subject property by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales price (or unit price as appropriate) of the comparable properties based on relevant, market-driven elements of comparison." Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013). The income capitalization approach is the preferred method for estimating the value of income producing property. Parkway Village Apartments Co. v. Twp. of Cranford, 108 N.J. Tax 68, 79 (Tax 1996). "In the income capitalization approach, an appraiser analyzes a property's capacity to generate future benefits and capitalizes the income into an indication of present value." The Appraisal of Real Estate, supra at 439.

To support their valuation determination through these two methods, the plaintiff's appraiser relied on five comparable sales and five comparable leases, respectively. Each comparable property utilized by Plaintiff's appraiser in his report can be described as commercial retail property. However, due to plaintiff's appraiser's failure to adequately verify the majority of these comparable sales and leases, the court is unable to afford the majority of them with any weight. Out of the five comparable sales, testimony by plaintiff's appraiser indicates that only comparable sale number five was properly verified. Out of the five comparable leases, plaintiff's appraiser's testimony indicates that only comparable sale number four was properly verified.

This type of issue was contemplated by New Jersey lawmakers when the Legislature recognized the need for real estate appraisal experts to verify the data on which they rely to reach an opinion of value. N.J.S.A. 2A:83-1 requires that:

> In any action or proceeding in the Tax Court, any person offered as a witness in any such action or proceeding shall be competent to testify as to sales of comparable land, including any improvements thereon . . . from information or knowledge of such sales, obtained from the owner, seller, purchaser, lessee or occupant of such comparable land, or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales, which testimony when so offered, shall be competent and admissible evidence in any such action or proceeding.

The rationale behind the statute is equally applicable for the use of comparable sales as well as leases. Without having verified the accuracy of the lease information on which he relies, plaintiff's expert cannot credibly offer an opinion of market rent or fair market value. The Appraisal of Real Estate 14th Edition elaborates that, "referencing the source of secondary data only confirms its existence and does not verify the transaction." Appraisal Institute, The Appraisal of Real Estate 385 (14th ed. 2013). The text further explains that, "[g]enerally, the secondary sources do not provide adequate information about sale concessions, whether the sale was an arm's-length transaction, if multiple properties were involved in the sale, if personal property was included, and other factors influencing price." Ibid. Further, in VBV Realty, LLC v. Twp. Of Scotch Plains., 29 N.J. Tax 548 (Tax 2017)., the court held that, "[a]n appraiser must verify the integrity of the information by confirming that the data obtained is factually accurate and that the transactions reflect arm's-length market considerations." The appraiser in that case had "relied exclusively on information he gathered from New Jersey Association of County Tax Boards… website, Garden State Multiple Listing Service…" Id. At 562. As a result, the court held that

plaintiff's appraiser had "failed to abide by the fundamental tenets of the sales comparison approach and the requirements mandated by our legislature under N.J.S.A. 2A:83-1." Id. at 564.

The court can point to nothing in the trial record providing support for a conclusion that the comparable sales and leases offered by plaintiff's expert are accurate and reliable as evidence. The record shows that the five comparable sales were all located in the subject's geographic region and submarket. Each comparable sale can be categorized as a one story commercial retail building. The comparable sales properties reflected a variety of retail uses. Several adjustments were made to each property however none have any effect on the outcome of the instant case.

In preparing his report, the only method of verification employed by plaintiff's appraiser for comparable sales 1-4 was via MLS listings. Plaintiff's appraiser verified comparable sale #5 through the grantor, who is also the owner of the subject property in this matter. As was the case in VBV Realty, LLC, and in accordance with the guidance set out by The Appraisal of Real Estate, without having taken additional steps at verifying each sale, such as communicating with brokers, sellers, or purchasers of each comparable property, plaintiff's appraiser's use of MLS as the sole verification method is inadequate.

In order to accurately establish fair market value of a property through the comparable sales approach to valuation, it is essential that the appraiser utilize an adequate number of verified sales to determine the trends in the market and reach a reasonable conclusion of value. An appraiser's failure to provide more than one valid comparable sale in their report was discussed in Lorenc v. Bernards Township, 5 N.J. Tax 39 (1982)., where the Tax Court held that "a single sale is not a sufficient sampling to arrive at a firm conclusion. The inquiry relates to what purchasers of property of this kind will pay and what willing sellers will demand in sales of this type." Given that comparable sale #5 is the only sale with any weight, the court cannot accept plaintiff's

determination of fair market value through plaintiff's comparable sales analysis. As was the case in Lorenc, "[u]ntil a sufficient number of samplings have been examined to establish a definite trend from which a reasonable conclusion can be drawn, this answer cannot be given." Ibid.

In the present matter, plaintiff's appraiser likewise did not comply with the requirements set forth above in terms providing adequate verification of the details of the leases utilized in plaintiff's income capitalization approach. This is evidenced in the record by testimony indicating that plaintiff's appraiser's report did not properly list the lessors and lessees of the majority of comparable properties as well as indications that the nature of some of the leases used were not credible, with some being subleases in actuality. Further, testimony by plaintiff's appraiser indicates that the only method of verification used to verify leases #1, #2, #3, and #5 were MLS listings. N.J. Rule 8:6-1(b)(2) requires that:

> A party intending to rely on sales or rentals of comparable properties shall furnish each opposing party with a list of comparable sales or rentals intended to be established by proof which list shall set forth as to each sale or rental the location of the property by block, lot, street, street number and municipality and, as to each sale, the name of seller and purchaser, date of sale, the consideration, book and page number of the recording of the deed and, if available, the form SR1A identification number of the Division of Taxation and, as to each rental, name of landlord and tenant, date of lease and relevant lease terms.

As was the case with plaintiff's comparable sales, without taking further steps to verify, the court cannot afford weight to said leases. For comparable lease #4, the appraiser testified that he recalled speaking to an unidentified individual to verify details about the lease and tenants, but was unable to recall who that individual may have been. The lack of adequate verification of the comparable leases is similarly fatal to plaintiff's determination of value through the income capitalization approach and does not permit a determination of fair market rent or fair market value.

Without credible evidence on the record regarding comparable sales and leases, the court cannot determine the true market value of the subject property on the relevant valuation date under plaintiff's income capitalization approach or the comparable sales approach. In the present case, because the court is left with only one comparable sale and one comparable lease, there is insufficient evidence in the trial record on which to make a determination, by a preponderance of the evidence, of true market value of the subject property on October 1, 2015. Accordingly, the court will enter Judgment affirming the decision of the county board of taxation with respect to tax year 2016. The Clerk of Court is directed to enter Judgment in accordance with this opinion.

Very truly yours,

_____

*JOSEPH M. ANDRESINI, P.J.T.C.*